[L. A. No. 2553.  In Bank.—August 27, 1910.]

## OLD SETTLERS INVESTMENT COMPANY, Appellant, **v.** W. A. WHITE, Respondent.

CHATTEL MORTGAGE—NON-COMPLIANCE WITH CODE—EFFECT UPON SUBSEQUENT ASSIGNEE OF PRIOR CREDITOR—NOTICE.—Under the provisions of section 2973 of the Civil Code, that "mortgages of personal property, other than that mentioned in section 2955, and mortgages not made in conformity with the provisions of this article, are nevertheless valid between the parties, their heirs, . . . and persons who, before parting with value, have actual notice thereof," only subsequent creditors who take with such actual notice are contemplated, and neither a prior creditor whose claim accrued before the existence of the mortgage, nor his subsequent assignee who stands in his shoes, though having actual notice of the existence of such a mortgage, is bound thereby.

ID.—GENERAL RULE APPLICABLE—PROTECTION OF VENDEE OF BONA FIDE HOLDER.—The well-settled general rule that if one person should purchase property with notice of a latent equity in some third person, and his vendor is a *bona fide* holder without notice, such purchaser is entitled to avail himself of the rights of his vendor, and takes the property free from the equities of such third person, is applicable to the case of a prior creditor who has no notice of an irregular chattel mortgage, though his assignee has such notice, but may avail himself of the rights of his assignor, without estoppel by such notice.

ID.—CONSTRUCTION OF CODE PROVISIONS—PROTECTION OF PRIOR CREDITORS.—In determining whether an irregular chattel mortgage is valid against prior creditors of the mortgagor, section 2973 of the Civil Code is to be construed with section 2957 thereof, providing that mortgages not complying with the code are void "as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property, in good faith and for value;" and it follows that a creditor who took in good faith when he parted with his money is protected, and that creditors who took prior to the existence of the mortgage are necessarily protected, and the provision as to

actual notice can only apply to subsequent creditors who have actual notice when parting with the consideration upon which their debts are founded.

ID.—VALIDITY OF MORTGAGE ON "FURNITURE AND HOUSEHOLD GOODS"—AMENDMENT OF CODE AS TO "HOTEL PROPERTY."—A chattel mortgage comprising principally "furniture and household goods," consisting of tables, chairs, dishes, and other household and kitchen furniture of various kinds, is valid under subdivision 8 of section 2955 of the Civil Code, without qualification or limitation, if properly executed and recorded. No change in that subdivision was intended to be affected by the amendment of that section in 1905 by adding section 22 as to furniture and equipment usually found in a hotel.

ID.—MORTGAGE ON RESTAURANT "EQUIPMENT"—PARTIAL INVALIDITY—VALID DESCRIPTION UNAFFECTED.—The fact that the chattel mortgage, besides the property falling within subdivision 8, also included "gas fixtures, moldings on the wall, a large boiler and smokestack, and plumbing fixtures," constituting the "equipment" of the restaurant, which were not the subject of mortgage under subdivision 8, cannot affect the validity of the chattel mortgage as to property falling within the statute.

ID.—EFFECT OF RULES CONSIDERED—EXECUTION UNDER PRIOR DEBT—LIMITED LEVY—PAYMENT OF MORTGAGE DEBT.—The effect of the rules considered is that under an execution based upon a prior debt antedating the chattel mortgage the sheriff may levy upon property included in its description which is not within the statute, without paying the mortgage debt; but as to property lawfully mortgaged, he cannot levy thereon, except upon condition that he has paid the mortgage debt.

ID.—NECESSITY OF PROVING JUDGMENT—WRIT NOT PERMISSIBLE AS A WEAPON OF ATTACK.—The rule allowing the officer to justify under the writ as against the judgment creditor is for his own protection alone; but he cannot use the execution as a weapon of attack against a third party having an interest in the property, or against a mortgagee having a valid chattel mortgage on the property, whose lawful rights he disregards, but he must, in such case, support his execution by proving that it is founded upon a judgment.

ID.—EXISTENCE OF JUDGMENT NOT SHOWN—ABSENCE OF ENTRY—STIPULATION OF PARTIES FILED AND RECORDED IN JUDGMENT DOCKET.—The existence of a judgment is not shown where it appears that no judgment was ever entered in the judgment-book, nor any judgment-roll made up, but it solely appears that the clerk filed the stipulation of the parties that judgment be entered according to the prayer of the complaint, and recorded the same in his judgment-docket only.

ID.—CLERK A MINISTERIAL OFFICER—STRICT COMPLIANCE WITH STATUTE ESSENTIAL TO VALID JUDGMENT.—The clerk is a mere ministerial officer exercising no judicial functions, and he must conform strictly to the statute in entering a judgment authorized by him, or his proceedings will be without any binding force.

ID.—VALIDITY OF CHATTEL MORTGAGE—AFFIDAVIT BY MORTGAGOR AND SECRETARY OF CORPORATION MORTGAGEE.—A corporation cannot take an oath as such, and when the affidavit describes the mortgagor, and the secretary of the corporation mortgagee, as affiants, and each makes the proper affidavit to make the mortgage effective, it is sufficient to entitle it to be recorded.

ID.—AFFIDAVIT FOR CORPORATION—SUFFICIENCY.—The statute makes no provision as to who shall make the affidavit when a corporation is a party to a chattel mortgage, and it does not require the person who makes it for the corporation to declare on oath his official position or relation. It is sufficient if he declares it in the introductory statement describing the persons who make the affidavit.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge.

The facts are stated in the opinion of the court.

F. A. Stephenson, and Louis W. Myers, for Appellant.

W. R. Bacon, and G. P. Adams, for Respondent.

SHAW, J.—This appeal was originally taken to the district court of appeal for the second district. Judgment in the trial court was for the defendant and the plaintiff appeals upon the judgment-roll alone. The decision of the district court was vacated and the cause transferred to the supreme court for reconsideration.

The action was to recover damages from the defendant, as sheriff, for levying an execution upon certain personal property upon which the plaintiff held a mortgage, without paying the mortgage debt. The mortgage was executed to plaintiff by J. H. Scales and C. P. Halfhill on September 11, 1906, and was recorded on the same day. The trial court found that the property mortgaged consisted of furniture, tables, stoves, ranges, cooking utensils, and equipment contained and used in a certain restaurant, but that it was not in any manner connected with a hotel, although it was property of a kind usually found in hotels. The mortgage is set forth in the record and the description of the property therein shows that it consists principally of tables, chairs, dishes and other household and kitchen furniture of various kinds. The so-called judgment upon which the execution in question was issued was based

on a complaint filed in the superior court on September 12, 1906, stating a cause of action in favor of James T. Cleary and against J. H. Scales and C. P. Halfhill, upon a promissory note dated July 2, 1906, payable to W. R. Bacon, due thirty days after date, for $575, executed by J. H. Scales and C. P. Halfhill and assigned by Bacon to Cleary. Execution was issued to the defendant on September 12, 1906, and immediately levied upon the mortgaged property. No payment or offer to pay the mortgage debt was made. On September 13, 1906, the plaintiff served upon the defendant a demand that he either pay the amount of the mortgage debt or release the property from the levy.

The plaintiff claims that Cleary, the holder of the judgment, is bound by the mortgage, even if it was not executed as prescribed in the Civil Code, and even if the property is not of a class which, by the provisions of the code, was subject to mortgage at the time it was executed. This claim is based upon the provisions of section 2973 of the Civil Code. This section was added to the code in 1905. (Stats. 1905, p. 617.) It reads as follows: "Mortgages of personal property, other than that mentioned in section 2955, and mortgages not made in conformity with the provisions of this article, are nevertheless valid between the parties, their heirs, legatees, and personal representatives, and persons who, before parting with value, have actual notice thereof." The court found that Cleary had actual notice of the plaintiff's mortgage before he parted with value. From this it is claimed that the mortgage was valid as against him under the provisions of the aforesaid section. The contention of the respondent on this point is that Cleary is entitled to all the rights of his assignor, Bacon, and that Bacon did not have actual notice of the mortgage at the time he accepted the note and parted with the consideration thereof. Manifestly he could not have had such notice, since the note was given on July 2, 1906, and the mortgage was not executed until September 11th. It is a well-settled proposition that if one person purchase property, with notice of a latent equity in some third person, and his vendor is a *bona fide* holder without notice, such purchaser is entitled to avail himself of the rights of his vendor and takes the property free from the equities of the third person. This doctrine, we think, is applicable to cases like the one before us. The

question thus presented is whether or not, under section 2973 aforesaid, a mortgage not made in accordance with the statute is valid as against previous creditors of the mortgagor. Section 2957 provides that mortgages on personal property are void "as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value," unless accompanied by the affidavit therein specified and acknowledged and recorded as therein stated. Creditors are here placed in the class of persons who are protected against mortgages not made and recorded in accordance with the statute. It is also settled by the decisions that attaching creditors are classed among the persons who are protected against mortgages upon personal property which the statute does not authorize to be mortgaged. (*Glenn* v. *Arnold,* 56 Cal. 631; *Lemon* v. *Wolff,* 121 Cal. 275, [53 Pac. 801].) The provisions of section 2973 must be considered in connection with those of section 2957. The creditors, therefore, stand in the same category with reference to the validity of chattel mortgages as subsequent *bona. fide* purchasers and encumbrancers. Mortgages not valid against the latter are not valid against the creditor, except under the same circumstances. It would follow, therefore, that a creditor who has no actual notice of the mortgage is not bound thereby, and may levy thereon for his debt; unless it is made and recorded in compliance with the statute and is upon property which the statute declares may be mortgaged. The result is that creditors whose debts existed prior to the execution of the mortgage are not affected by the provisions of section 2973. So far as the creditors are concerned, the provision regarding persons with actual notice can apply only to subsequent creditors who have actual notice of the mortgage before parting with the consideration upon which their debts are founded. Cleary is, therefore, not estopped by the provisions of section 2973.

Judgment in the court below was given for the defendant upon the theory that the property described was not subject to be mortgaged under the provisions of section 2955 of the Civil Code, as it existed at the time the mortgage was executed. (Stats. 1905, p. 36.) By that amendment three new clauses numbered 20, 21, and 22 were added to the section. So far as material here the section as amended in 1905 was as follows:—

"Mortgages may be made upon the following personal property and none other:—

" . . .

"8. Upholstery, furniture and household goods.

" . . .

"22. The bedroom furniture, carpets, tables, stoves, ranges, cooking utensils, and all furniture and equipment usually found in a hotel."

The court below was evidently of the opinion that clause 22 of the section was the only clause applicable to the case and that as the property was contained and used in a restaurant and was not in any manner connected with a hotel, it was not of a character which the statute allowed to be mortgaged. In *Blaisdell* v. *McDowell*, 91 Cal. 287, [25 Am. St. Rep. 178, 27 Pac. 656], the court referring to this section said: "The section of the code in question should have a reasonable construction, with a view of executing the evident design of the legislature in enacting it. While the language used should not be strained to include cases not clearly embraced by it, the meaning to be given to it should not be so narrowly circumscribed as to exclude cases clearly within it." Inasmuch as the amendment of 1905, re-enacted subdivision 8 without change, it could not reasonably be supposed that the legislature intended that subdivision 22 should entirely supersede subdivision 8. As the section stood prior to that amendment, the right to mortgage upholstery, furniture, and household goods, under subdivision 8, was without qualification or limitation. A mortgage upon property of that description would be valid, if properly executed and recorded, as well where the property was stored in a warehouse or not devoted to any use, as where it was in actual use in a dwelling, lodging house or hotel. We are of the opinion that no change was intended to be made in this particular and that, notwithstanding the addition of subdivision 22, property of the kind specified in subdivision 8 could be mortgaged under the amendment of 1905, regardless of its situation or its use, to the same extent as before that amendment was made. The purpose to be served by subdivision 22 was not to supersede subdivision 8, but to favor the hotel business by allowing the equipment of a hotel to be mortgaged as chattels, although not embraced in the classes described in subdivision 8. Its

purpose was to extend the right so as to include other property, rather than to take away the right previously existing. This is shown by clauses 20 and 21 which allowed mortgages of chattels used in apiaries and oil refineries, a right not previously given. It is also well illustrated by the present case. The mortgaged property here consisted of a large number of articles of property which, as above stated, consisted principally of household goods, such as tables, chairs, and dishes. They were used in a restaurant, and in connection therewith were a number of other articles, constituting a part of the equipment of the restaurant. All of these articles were described as part of the property mortgaged. Among them were gas fixtures, moldings on the wall, an awning, some shelving in the pantry and kitchen, a large boiler and smokestack and certain plumbing fixtures. These articles, if used in a hotel, would form a part of its equipment and if so they could be mortgaged under subdivision 22, although some of them are clearly not furniture nor household goods and could not be mortgaged under subdivision 8. The fact that this mortgage included some articles which were not subject to be mortgaged, in connection with other articles which the statute allows to be mortgaged, does not make the mortgage invalid as to those which come within the statute. (*In re Fischer,* 94 Cal. 523, [29 Pac. 961] ; *San Francisco Breweries* v. *Schurtz,* 104 Cal. 426, [38 Pac. 92].) The effect of these rules is that the mortgage was good with respect to property included therein which the statute allows to be mortgaged, and that an execution creditor would be at liberty to levy upon the property described therein which did not come within the provisions of the statute, without paying or tendering the amount of the mortgage debt, but that he could not levy upon that part of the property lawfully mortgaged, except on condition that he paid the debt.

It is contended on behalf of the defendant that as the property at the time of the levy was in possession of Scales and Halfhill, the defendants in the execution, he could justify under his writ by producing the writ alone, without establishing the existence of the judgment upon which it was founded. That this is the general rule cannot be disputed. The rule does not apply, however, when the officer executing the writ is infringing upon the rights of third persons in the property.

Usually this exception to the rule consists of cases where the levy is made when the property is in the possession of a third person claiming title. But in view of the principles upon which the exception is founded, we think it must apply also to any case in which third persons have an interest in the property levied upon which will be affected or destroyed by the levy. In *Knox* v. *Marshall,* 19 Cal. 622, it was held that the pledgee of the property was a third person within the exception, and that an officer levying upon such property could not justify without proving the existence of a judgment to support the writ. In *Bickerstaff* v. *Doub,* 19 Cal. 112, [79 Am. Dec. 204], the same principle was applied to a purchaser in possession who had not paid the price under a contract of purchase which provided that the title should remain in the vendor until the price was paid. The leading case on the subject in this state is *Thornburgh* v. *Hand,* 7 Cal. 562. In that case, referring to a levy upon property which had been sold to a third person, the court quotes the following from *Noble* v. *Holmes,* 5 Hill (N. Y.) 195: "The sale could not be impeached by a creditor at large; it must be a creditor having a judgment and execution, or some other process which authorized a seizure of the goods. As a general rule. process regular on its face is sufficient for the protection of the officer, although it may have been issued without authority. But when the officer attempts to overthrow a sale by the debtor, on the ground of fraud, he must go back of his process, and show authority for issuing it. If he act under an execution he must show a judgment." And upon rehearing the court added: "It requires something more than a mere indebtedness between the parties to justify the taking of property from the possession of a third person. A mere creditor cannot, as before remarked, impeach the sale until he shows that he has a judgment or a lien; neither can the officer who represents him do so. The debt, of itself, gives no right to seize the property, but the attachment, and it is essential for its validity that it should have been issued in conformity with the law. If the officer seizes the property of the debtor, and the writ be regular on its face, it is a sufficient justification to him; for the defendant may, if the attachment has been improvidently issued, move to have it quashed, or bring a suit upon the undertaking, but a third party, a stranger to the record,

could not interfere, and, therefore, it would seem but justice, that before any right could be established against him, by reason of a proceeding to which he was not a party, that its regularity should be shown." This is based on substantially the same considerations of sound policy as the well-settled principle that a creditor who desires to impeach a transaction between the debtor and a third person, and take property of the debtor to satisfy his own debt to the prejudice of such third person, must show either that he has a lien upon the property, or that he has a judgment and execution and a return of *nulla bona,* or a levy upon the property itself. (*Castle* v. *Bader,* 23 Cal. 75; *Massey* v. *Gorton,* 12 Minn. 145, 90 Am. Dec. 288, note.) It is also in line with the proposition that the rule allowing an officer to justify by the production of the writ alone is one which operates solely for his protection and. that it cannot be used by him as a weapon of attack. (*Dunlap* v. *Hunting,* 2 Denio (N. Y.) 643, [43 Am. Dec. 763]; *Earl* v. *Camp,* 16 Wend. (N. Y.) 566; *Horton* v. *Hendershot,* 1 Hill (N. Y.) 119; 1 Freeman on Executions, sec. 101.) From these doctrines, we think it necessarily follows that when the officer is attempting to make a levy upon mortgaged property, and intends to so far disregard the rights of the mortgagee as to undertake to levy upon the property without performing the statutory duty of making a previous payment of the mortgage debt, he is to that extent using his writ for the purpose of attack and not of defense, and that when he seeks to justify under the writ and disregard the mortgagee's claims, he must support his execution by proving that it is founded upon a judgment.

In the case at bar the defendant failed to show the existence of any judgment. According to the findings, the complaint of Cleary against Scales and Halfhill was filed on September 12, 1906, and on the same day the defendants, Scales and Halfhill, signed and delivered to Cleary, and Cleary filed with the clerk, a document entitled in the cause, in which they admitted all the allegations of the complaint, entered their appearance to the action, consented and requested that the clerk should enter a judgment against them for the amount demanded in the complaint, and waived the right to answer. The finding is that this document was filed and recorded by the county clerk in the "judgment docket" of the records of

his office and that no other judgment was ever entered in the cause. The law requires that judgments be entered in the judgment book (Code Civ. Proc., sec. 668). Thereupon the judgment-roll must be made up as provided in section 670 of the Code of Civil Procedure, and immediately after filing such roll the clerk makes the proper entries of the judgment in the "docket kept by him" (sec. 671). This docket is described in section 672 (Code Civ. Proc.), as a book divided into columns in one of which under the head of "Judgment" the amount must be stated, if it is a money judgment; if not, "a memorandum of the general character of the relief granted" must be stated therein. This "docket" is not the book in which judgments are to be entered. Even if it were, the paper said to be recorded therein was not a judgment. The recording in this "docket" of a document, signed by the defendants, declaring their consent to the entry of a judgment, could not constitute a judgment, and as no other judgment was entered in the cause, we must conclude that no judgment existed. The proceeding there attempted to be followed was that provided in section 997 of the Code of Civil Procedure. Under that section, the defendant, at any time before trial, may serve upon the plaintiff an offer to allow judgment to be taken against him for a specified sum. If the plaintiff accepts this offer he may file the same and the clerk "must thereupon enter judgment accordingly." The rule as settled by the decisions in this state, with respect to such judgments, is that the clerk in entering them acts in a ministerial capacity only, and that he must follow closely the forms provided by law for the exercise of the power conferred upon him, otherwise his acts will be invalid. In *Crane* v. *Hirshfelder,* 17 Cal. 585, in considering this section, the court says: "The clerk has no general jurisdiction or power to render, or of his own motion, and as his act, to enter, judgments; and when in a few exceptional cases the statute confers a power of this sort, as he looks to the statute for the source of his authority, so he must pursue, at least substantially, the directions of the statute, in order to impart validity to his acts." In *Kelly* v. *Van Austin,* 17 Cal. 565, speaking of the power of a clerk to enter a judgment by default, the court says: "The clerk in entering judgments by default acts in a mere ministerial capacity. He exercises no judicial functions. The statute authorizes the

judgment, and the clerk is only an agent by whom it is written out and placed upon the records of the court. He must, therefore, conform strictly to the provisions of the statute, or his proceedings will be without any binding force." (See, also, *Stearns* v. *Aguirre,* 7 Cal. 449; *Long* v. *Serrano,* 55 Cal. 21; *County of Sacramento* v. *Central Pac. R. R. Co.,* 61 Cal. 255.) By the strict rules here required to be followed it is obvious that there is no judgment under section 997 if the clerk does not enter any judgment, but merely records in the judgment docket, in a place where the statute does not provide for the entry of judgments, a document signed by the parties to the action and consenting that a judgment may be entered.

As the judgment is to be reversed and a new trial may show different facts, it is proper to consider here the alleged defect in the affidavit of the parties to the mortgage. On behalf of the plaintiff the affidavit was made by J. F. Reynolds, its secretary. A corporation cannot take an oath. When an affidavit is required of a corporation, and no particular officer is designated in the statute as the person who shall make it, it may be made by any one of its officers or agents in its behalf. The affidavit of Reynolds, Scales, and Halfhill was as follows: "J. H. Scales and C. P. Halfhill, mortgagors in the foregoing mortgage named, and J. F. Reynolds, secretary of Old Settlers Investment Company, a corporation, the mortgagee in said mortgage named, each being duly sworn, each for himself doth depose and say: that the aforesaid mortgage is made in good faith and without any design to hinder, delay or defraud any creditor or creditors." It was duly signed and sworn to. The criticism is that Reynolds does not make oath to the fact that he was then the secretary of the corporation, but merely recites the fact in the preliminary statement which does not purport to have been made under oath. The statute makes no provision as to who shall make the affidavit when a corporation is a party to a chattel mortgage and it does not require the person who makes it for the corporation to declare on oath his official position or relation. We think it is clearly sufficient if he declares it in the introductory statement describing the persons who make the affidavit. On the principle contended for by the defendant, it would be necessary for Scales and Halfhill to declare on oath that they are the mortgagors. True, the identity of names raises a disputable pre-

sumption to that effect, but it is mere evidence not having the sanction of an oath. The declaration, signed by Reynolds, that he is the secretary of the corporation mortgagee is a similar degree of proof and is sufficient to satisfy the law in this particular. (See *Modesto Bank* v. *Owens,* 121 Cal. 226, [53 Pac. 552]; *Yost* v. *Commercial Bank,* 94 Cal. 496, [29 Pac. 858].)

For these reasons we are of the opinion that if the defendant had been acting under a valid execution he could not have lawfully levied upon all the property without previous payment of the mortgage debt and that he was acting without authority in making the levy upon an execution not supported by any judgment.

The judgment is reversed.

Angellotti, J., Sloss, J., and Lorigan, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.