PULSIPHER v. CHINN (SCHMUTZ, Intervener)

No. 4476.   Decided April 2, 1927.   (255 P. 439.)

*Shay & Lunt,* of Cedar City, and *Young, Boyle & Moyle,* of Salt Lake City, for appellant.

*J. M. Foster* and *George B. Hancock,* both of Cedar City, and *Wm. B. Higgins,* of Fillmore, for respondents.

PARKER, District Judge.

This action was commenced in the district court of Washington county. The plaintiff in his complaint declares upon two promissory notes, one dated April 20, 1922, in the principal sum of $1,917, and one dated October 28, 1922, in the principal sum of $5,481. Subsequent to the filing of the complaint the defendant, William Chinn, filed a confession of judgment in favor of the plaintiff for the amounts prayed for in plaintiff's complaint. At the time of the filing of the complaint the plaintiff also caused to be issued a writ of attachment directed to the sheriff of Iron county, and in pursuance of said writ of attachment the sheriff of Iron county attached 275 head of sheep then in the possession of the defendant, Chinn. Subsequent to the levy of this attachment, to wit, on the 9th day of September, 1925, an order was entered permitting the intervener, Gottlieb Schmutz, to file a complaint in intervention, which complaint was later amended. The substance of the amended complaint is that the sheep attached by the sheriff of Iron county as the property of the defendant, Chinn, were in truth and in fact the property of the intervener, Gottlieb Schmutz, and that the said Gottlieb Schmutz was entitled to the immediate possession of the said sheep; that the value of said sheep was $4,140; that demand had been made upon the sheriff of Iron county for the possession of said sheep, but that said sheriff had failed, neglected, and refused to deliver said sheep to the said intervener. To the amended complaint in intervention the plaintiff filed an answer wherein he in substance denied each allegation thereof except that the sheriff had attached the sheep by virtue of the writ of attachment. By way of further answer to the amended complaint in intervention the plaintiff further alleged that the plaintiff was a creditor of the defendant; that the sheep

attached were the property of the defendant, and in any event that any rights that the intervener may have in and to the sheep attached were inferior and subsequent to the rights of the plaintiff as a creditor and by reason of said writ of attachment. To the further answer of the plaintiff to the intervener's amended complaint the intervener filed a reply, wherein, among other things, he alleged that at the time of the execution and delivery of the notes sued upon by the plaintiff in this case and executed by the defendant, the said plaintiff well knew that the sheep attached by the sheriff of Iron county and now involved in this case were the property of the intervener, Gottlieb Schmutz. The case was tried before the court and jury. By the verdict of the jury it was found that the intervener, Gottlieb Schmutz, was the owner of the sheep attached, and judgment upon the verdict was entered to this effect. The plaintiff appeals to this court for a reversal of the judgment. A number of errors are assigned.

It is first contended that the court erred in overruling plaintiff's demurrer to intervener's amended complaint. The language therein complained of is as follows:

"That in truth and in fact the said sheep and all of them so attached were not and are not the property of the defendant, William Chinn, nor has he any interest therein, but were and are the property of this intervener, and he is entitled to the immediate possession thereof and the same are unlawfully held by said sheriff on the said writ of attachment."

It is contended that the allegation that the "intervener is entitled to the immediate possession thereof" is a mere conclusion of law and is not a statement of fact; that the facts showing the right of possession should be stated.

We are of the opinion that the amended complaint is sufficient. See *Bush* v. *Bush*, 55 Utah, 237, 184 P. 823. In that case Mr. Justice Thurman, quoting from 23 R. C. L. p. 25,

under the heading of "Pleading," approves the following statement of the rule:

"It may be stated as a well-settled general rule that it is necessary to allege both the ownership, either general or special, and the right to immediate possession in a complaint for replevin.  *  *  *

"Where the complaint merely alleges ownership in the plaintiff without averring a right of possession, no cause of action is stated. It is necessary to allege that the plaintiff is the owner and entitled to possession of the property at the date of the commencement of the suit."

Quotation in this case is also made, with approval, from 34 Cyc. p. 1464, as follows:

"The material facts to be alleged are plaintiff's ownership, either general or special, of the property, describing it, his right to its immediate possession, and the wrongful taking or detention thereof by defendant."

We also desire to refer to the case of *Benesch et al.* v. *Waggener,* a Colorado case, 12 Colo. 534, 21 P. 706, 13 Am. St. Rep. 254, wherein the court uses the following language:

"In the complaint before us, it is alleged that the plaintiff is the owner of the goods and [is] entitled to the immediate possession of the same, and that the defendants unjustly detain [the same]."

The complaint was held sufficient.

The next assignment relied upon is that the court erred in refusing to direct a verdict in appellant's favor. Appellant does not contend that he was the owner of the sheep in question, but does contend that the record shows, ■ at least as to part of the sheep, that the defendant, Chinn, was the owner thereof, and that therefore they should be subjected to his writ of attachment. It may be stated that on the issue of ownership the evidence is in conflict; however, we are of the opinion that the great preponderance of the evidence supports the verdict of the jury that the

intervener, Schmutz, was the owner of the sheep. But, in spite of this fact, the plaintiff claims that the sheep, being in the possession of Chinn, were subject to the claims of the appellant. It is not disputed that the plaintiff is a creditor of the defendant, Chinn, nor is it disputed that the leases of the sheep in question and attached, made by the intervener, Schmutz, to Chinn, were not recorded as required by the Utah statutes. The leases in question were three in number—one dated September 22, 1918, for 490 head, which was renewed under date of September 22, 1920, for 713 head, which latter lease was again renewed September 22, 1924, for 834 head. Section 130 of the Compiled Laws of Utah 1917, as amended by chapter 3, Laws of Utah 1921, reads as follows:

"Section 130. All leases, and all contracts of sale or agreements to sell in which the title is retained in the vendor until the purchase price is paid in whole or part of more than twenty-five head of horses, twenty-five head of cattle or one hundred head of sheep, shall be in writing, and must be acknowledged in the same manner as grants of real property, and such leases or agreements or copies thereof, duly certified by an officer authorized by the laws of the state of Utah to take acknowledgments to conveyances of real property, shall be filed in the office of the county recorder of the county in which the lessee, or purchaser of the property, as the case may be resides; and a failure to comply with the provisions of this section shall render the interest of the lessor or vendor as the case may be in said property, subject, subsequent and subordinate to the claims of the creditors of the lessee or purchaser as the case may be, and of subsequent purchasers and encumbrances of the property in good faith and for value."

In connection with this statute it might be stated, and we think the record affirmatively shows, as will be hereinafter shown, that the plaintiff extended credit and loaned the defendant, Chinn, the money, out of which plaintiff's complaint grew, with notice or knowledge that the sheep in question in this case were the sheep of the intervener, Schmutz. It is contended by the appellant that even though this fact be admitted, still, by reason of the statute above quoted, the sheep attached are subject to the claim of the

appellant. It may be here stated that the cases construing languge similar to that used in the above statute, in the various states, are in hopeless conflict. The conflict turns upon the construction to be given to the language, "and a failure to comply with the provisions of this section shall render the interest of the lessor or vendor, as the case may be, in said property, subject, subsequent and subordinate to the claims of the creditors of the lessee or purchaser, as the case may be, and of subsequent purchasers and encumbrancers of the property in good faith and for value." Some of the courts take the view that the last phrase, " in good faith and for value" must only be held to apply and be construed in connection with that part of the above quotation, "of subsequent purchasers and incumbrancers of the property," and is not intended to be attached to nor be construed in connection with the phrase, "the claims of creditors of the lessee." In other words, it is admitted that if the words "good faith" are to be construed in connection with the portion of the statute referring to the claims of creditors; then if the party extending credit to the lessee had notice or knowledge, at the time that he extended the credit or loaned the money, as in this case, of the fact that the property then in the possession of the lessee was not in fact his property, then such a creditor, with notice or knowledge, could not claim the benefits of the statute.

Construing similar language to that above quoted in the Chattel Mortgage Act of the state of Oklahoma (Rev. Laws 1910, § 4031), the Supreme Court of that state in *Fiegel et al.* v. *First Nat. Bank of Kingfisher*, 90 Okl. 28, 214 P. 183, used the following language:

"Counsel for the plaintiff insist that the rule announced in the case, supra [*Blevins* v. *W. A. Graham Co.*, 72 Okl. 308, 182 P. 247], is inapplicable for the reason the words 'good faith' only applies to purchasers, and not creditors, as the statute had been construed by the court prior to the revision of the Code in 1910. We fail to conceive of any good reason for placing a creditor in a different position to a purchaser, in attempting to create a lien on the mortgagor's property

by levying an attachment, if he has actual knowledge of the existence of an unrecorded mortgage that is valid between the parties. Where such a mortgage is free from fraud and was taken by the mortgagee in good faith to secure a just debt created by the mortgagee parting with a valuable consideration, it appears there can be no good reason for any distinction between such a lien, where actual notice exists, to one based only upon constructive notice such as is imparted by recording it. It was held in the case of *Fenby* v. *Hunt*, 53 Wash. 127, 101 P. 492, that 'actual notice is of a higher character than constructive notice.' The only purpose of recording an instrument is to impart notice to others than the parties to the contract. The rule is adhered to in Iowa, Kentucky, Maryland, Minnesota, and New Hampshire that creditors are in the same position as subsequent purchasers, and are held to be postponed to an unrecorded mortgage of which they had actual knowledge. See 11 C. J. p. 522, par. 198, and cases therein cited."

The cases taking a contrary view are reviewed in the case of *W. W. Kimball Co.* v. *Kirby*, 4. S. D. 152, 55 N. W. 1110. In other words, the courts following that view hold that the words "good faith" cannot be construed in connection with the phrase "claims of creditors," and therefore, inasmuch as the statute has not seen fit to except those cases, where the creditor had notice, actual knowledge is immaterial. The California court at first followed this rule. *Cardenas* v. *Miller*, 108 Cal. 250, 39 P. 783, 41 P. 472, 49 Am. St. Rep. 84. However, it is interesting to note that this construction was afterwards changed by legislative enactment. *Old Settlers' Inv. Co.* v. *White*, 158 Cal. 236, 110 P. 922.

As far as we have been able to ascertain, this precise question has not been before this court. However, the dicta in the case of *Volker Lbr. Co.* v. *Utah & Oregon Lbr. Co. et al.*, 45 Utah, 603, 148 P. 365, Ann. Cas. 1917D, 1158, seems to support the rule herein contended for, wherein the late Justice Frick uses this language:

"We are of the opinion, therefore, and so hold, that under our statute a chattel mortgage is, as a matter of law, invalid as against all persons who, *without notice or knowledge of the mortgage*, extend credit

to the mortgagor at any time after the mortgage is executed and delivered and before it is filed as required by the statute." (Italics supplied.)

And while, as we read that case, the question of actual notice was not involved, nor was it involved in the case of *Ruggles* v. *Cannedy,* 127 Cal. 290, 53 P. 911, 59 P. 827, 46 L. R. A. 371, a California case on which the decision in the Volker Case was based, still the above quotation is interesting as indicating the view of the writer of that opinion. It seems that the rule holding that actual notice of a prior unrecorded mortgage, or of the interest of a lessor under an unrecorded lease, is not affected where the subsequent mortgagee or creditor, as the case may be, has actual notice, is based on sound reason and accords more with a sound view of justice, for this reason, that the foundation of the recording laws is to prevent secret liens, or, in other words, a lien in favor of one person with possession of the personal property in another. All that recording can do, of course is to give constructive notice, and, it being admitted that actual notice is of a much higher order than constructive notice, would not a reasonable construction of the statute except those cases where actual knowledge is present?

We are therefore of the opinion, and so hold, that in view of the fact that the appellant in this case had notice or knowledge at the time he loaned the money to the defendant, Chinn, that the sheep then in his possession and which were later attached were in truth and in fact the property of the intervener Schmutz, the failure of Schmutz to file for record his leases as provided by section 130, as aforesaid, could not be taken advantage of by the plaintiff and appellant Pulsipher.

The appellant makes further complaint of the following instruction given by the court in its instruction No. 7, wherein the law was declared as follows:

"The court instructs the jury that if you find from a preponderance of the evidence in this case that the plaintiff, John M. Pulsipher, in

this action caused to be attached certain sheep in the hands of William Chinn, the defendant, which sheep were the property of the intervener, Gottlieb Schmutz, at the time they were attached, and that said John M. Pulsipher at the time said attachment was made knew that said sheep were owned by said Gottlieb Schmutz, or if said John M. Pulsipher had sufficient information to put him on inquiry as to who was the owner of said sheep, then your verdict shall be for the intervener, Gottlieb Schmutz."

The court gave substantially the same law in instruction No. 6, however, in a different form. We are inclined to the view that the above instruction was erroneous in this, that the court should have instructed the jury that in order for the plaintiff to be precluded he should have had notice or knowledge that Schmutz was the owner of the sheep attached at or before the time of the creation of the debt, or in other words, at or before the time that he loaned the money involved in this case to the defendant, Chinn. We think this view of the law is supported by the case above cited, *Volker Lbr. Co.* v. *Utah & Oregon Lbr. Co. et al.* In the course of the opinion it is there stated:

"It is perhaps true that the weight of authority, under statutes somewhat different from ours, is to the effect that only those creditors who have established, and therefore assert, liens against the mortgaged property can assail the validity of an unrecorded mortgage upon that ground. * * * The term 'creditors,' as used in our statute, therefore, includes all persons who may have claims against the mortgagor at any time while the mortgaged goods and chattels remain in his possession."

The more serious question arises when we come to consider the question of whether or not the giving of the above instruction was prejudicial to the rights of plaintiff, and we conceive that whether or not it was prejudicial turns upon the question of whether prior to the time he created the debt or loaned his money to the defendant Chinn, he did have actual notice that the sheep in question were in fact the sheep of the intervener, Schmutz. In other words, if it is

admitted in the testimony by the plaintiff that he did have such knowledge, then the court erred in failing to direct the verdict in favor of the intervener and the plaintiff was not prejudiced in any way by reason of the instruction complained of.

On page 89 of the transcript it is shown that the plaintiff while on the witness stand answered certain questions pertinent to the matter now being discussed, when being cross-examined with reference to a letter which he had written to Mr. Schmutz, as follows:

"Q. In reply to your letter of recent date, will say that I paid Mr. Chinn for the sheep and surprised he had settled with you for them long ago. Tell Mr. Chinn that I want the sheep settled for at once. I don't care to do business in that way. A. Yes.

"Q. What did you mean by that? A. Mr. Chinn told me plain enough that he had this in mind to buy these sheep from Schmutz.

"Q. Who? A. And that is what I let him have the money for.

"Q. Then you knew they were Schmutz's sheep? A. I knew he was buying sheep from Schmutz.

"Q. You knew they were Schmutz's sheep? A. Yes.

"Q. All right. A. I knew he was to buy sheep from Schmutz.

"Q. All right. A. Yes.

"Q. Then, Mr. Schmutz wrote and told you he hadn't paid for them, didn't he? A. Yes."

Further, on page 91 of the transcript, the following questions and answers appear:

"Q. It would be the Schmutz sheep? A. Yes; it would be the Schmutz sheep all right.

"Q. In fact, you had notice a number of times that they were Schmutz's sheep? A. Yes.

"Q. You understood that from the start? A. I understood that was the sheep he was to buy.

"Q. Yes? A. Yes."

It will be noted from the above testimony that the plaintiff admits freely that when he loaned the money to the de-

fendant it was for the purpose of buying sheep from Schmutz. The only question made is that he claims that he had no knowledge that the money was to be used to buy the particular sheep here attached, but it was to merely buy sheep from Schmutz. It becomes important, therefore, to note what is meant by the term "notice or knowledge." In the case of *Aultman, etc., Mach. Co.* v. *Kennedy*, an Iowa case, 114 Iowa, 444, 87 N. W. 435, 89 Am. St. Rep. 373, the court states the rule as follows:

"The notice is sufficient if it puts the party upon such inquiry as, if prosecuted, would lead to a knowledge of those rights with which it is proposed to affect him. The information given need not of necessity disclose the name of the mortgagee, nor the amount of the debt secured by the mortgage. It is sufficient if it puts a reasonable man upon inquiry which would certainly lead to a knowledge or discovery of the rights of the mortgagee under his mortgage."

We think a mere statement of the above rule shows that the evidence as set forth above brings the plaintiff within its terms, and in view of the fact that under the terms of such rule the plaintiff had notice or knowledge, we take the view that the instruction above quoted, even though erroneous, was not prejudicial to the rights of the plaintiff.

There are some other assignments of error, all of which we have examined, and in which we find no merit. We are therefore of the opinion that the judgment of the trial court should be affirmed. Such is the order. Intervener to recover costs.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.

FRICK, J., did not participate herein.