**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASON DENNIS,

*Plaintiff-Appellant,*

v.

BEH-1, LLC, a limited liability company in the State of California,

*Defendant,*

and

EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation,

*Defendant-Appellee.*

No. 04-56230

D.C. No.
CV-03-07064-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
August 17, 2006—Pasadena, California

Filed May 7, 2007

Before: Alex Kozinski, Diarmuid F. O'Scannlain and
Jay S. Bybee, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Kozinski

**COUNSEL**

Louis P. Dell, Esq., Law Office of Louis P. Dell, Los Angeles, California, for the plaintiff-appellant.

Alexander Frid, Jones Day, Los Angeles, California; Meir Feder, Jones Day, New York, New York, for the defendant-appellee.

**OPINION**

PER CURIAM:

We address whether a credit reporting agency is liable under the Fair Credit Reporting Act (FCRA), Pub. L. No. 90-321, 84 Stat. 1128 (codified at 15 U.S.C. § 1681), when it relies on inaccurate information contained in public records. We also consider the appropriate scope of a reinvestigation of a disputed report under 15 U.S.C. § 1681i.

**Facts**

In October of 2002, plaintiff Jason Dennis was served with an unlawful detainer complaint by his landlord, BEH-1, LLC.

BEH-1 eventually agreed to drop the suit, in exchange for $1,959, to be paid in installments; the parties stipulated that *no* judgement would be entered. A written stipulation was filed with the Los Angeles Superior Court, and someone—presumably a clerk—made the following entry on the court's Register of Civil Actions: "11/25/02 Court Trial Concluded - Judgment Entered."

Dennis subsequently received a credit report from defendant Experian Information Solutions, Inc., which indicated that a "Civil Claim judgment" had been entered against Dennis in the amount of $1,959. Dennis called Experian and advised it that he had settled the matter out of court and that a judgement was never entered against him.

Experian contacted Hogan Information Services, a third-party public records vendor, and requested that it verify the disputed information. Hogan reported back that the information was accurate, and Experian advised Dennis that it would not amend the report.

Dennis sued Experian, alleging violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.10, and the FCRA. The district court granted summary judgment for defendant on all claims. On appeal, Dennis challenges only the summary judgment ruling on his federal claims arising from Experian's duty to maintain "reasonable procedures" to ensure the accuracy of credit reports under section 1681e(b), and its duty to reinvestigate the information Dennis disputed under section 1681i.[1]

---

[1]As noted above, Dennis pursued a series of claims under state and federal law. He presumably invites us to consider all of these claims by broadly framing the question presented to us as "[w]hether it was error for the trial court to grant summary judgment in favor of Experian." However, his brief presents argument only on his section 1681e(b) and 1681i claims. Dennis has therefore waived his right to appeal summary judgment on all claims not specifically argued in his brief. *See Entm't Research Group,*

**Analysis**

### 1.   Section 1681e(b) claim

[1] To maintain a claim under this section, plaintiff must show not merely that the information disputed was inaccurate, but that the credit reporting agency failed to maintain "reasonable procedures" to insure the accuracy of its reports. *See Guimond* v. *Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Here, information in the court file indicated that a judgment had been entered against Dennis in the lawsuit brought by his former landlord. The trial minutes noted that "pursuant to a WRITTEN stipulation, the parties applied to the court for judgment, which was so ordered," and the Superior Court's Register of Actions likewise indicated that a judgment had been entered. But the Superior Court has since issued an order declaring these entries to have been erroneous.[2]

[2] We've held that once a plaintiff establishes that his credit report was inaccurate, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. But while the FCRA requires "maximum possible accuracy," it does not subject reporting agencies to

*Inc.* v. *Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . . 'Judges are not like pigs, hunting for truffles buried in briefs.' " (quoting *Greenwood* v. *FAA*, 28 F.3d 971, 977 (9th Cir. 1994))).

[2]In its response to Dennis's interrogatories, Experian admitted that there had been no judgment entered against Dennis. Experian then moved to amend its response to strike that admission, and the district court granted the motion. Dennis opposed the motion, and lists this as one of the issues he wishes this court to review on appeal. But Dennis presents no legal argument on this point and has thus waived the right to appeal the district court's order. *See* n.1 *supra*.

strict liability. *See* Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804, 18,820 (May 4, 1990) ("[Section 1681e(b)] does not require error free consumer reports."). Instead, the agencies are obligated to follow "reasonable procedures" to ensure that reports accurately reflect creditworthiness.

**[3]** Here, the only alleged defect in Experian's initial investigation was that it relied on secondary documents, namely the trial minutes and the Register of Actions, without obtaining a copy of the actual judgment. Experian no doubt tolerated some risk of error by relying on these documents rather than the primary source. But both documents were official records issued by the Superior Court, and while court record-keeping systems are not perfect—as this case demonstrates—most are reasonably accurate. We thus conclude that it was reasonable, as a matter of law, for Experian to base its initial report on the secondary documents without doing any additional investigation. *See Henson* v. *CSC Credit Servs.*, 29 F.3d 280, 285-86 (7th Cir. 1994).

## 2. Section 1681(i) claim

**[4]** When a consumer informs a reporting agency of alleged inaccuracies in his credit report, section 1681i(a)(1) requires that the agency commence a "reasonable reinvestigation" within 30 days. 15 U.S.C. § 1681i(a)(1)(A). Although Dennis had identified an error in his credit report, we cannot say that Experian's reinvestigation was unreasonable. After Dennis alerted Experian that his report was inaccurate, Experian contacted a third-party public records vendor, Hogan, to verify the accuracy of the document. Hogan hired a contractor, whom it regularly audits for reliability, to go to the courthouse and review the file. The contractor determined that a judgment had been entered against Dennis. While the stipulation suggested otherwise, the weight of the evidence, consisting of an entry in the Register notation and the trial minutes, supported that determination.

**[5]** Indeed, the weight of the evidence is also that, as a matter of California law, entry in the Register is "entry of judgment." This reading is supported by Cal. Civ. Proc. Code § 668 and California case law. Section 668 reads as follows: "*Except as provided in Section 668.5*, the clerk of the superior court, must keep, with the records of the court, a book called the 'judgment book,' in which *judgments must be entered*." Cal. Civ. Proc. Code § 668 (emphasis added). Similarly, in *Wilson* v. *Los Angeles County Employees Ass'n*, the court stated that "[t]he entry of a judgment consists in the recording of it in the judgment book, and there can be no record of a judgment until so entered. A judgment is entered when it is actually entered in the judgment book." 273 P.2d 824, 827 (Cal. Ct. App. 1954) (citations omitted); *see also Menzies* v. *Watson*, 38 P. 641, 642 (Cal. 1894) ("[Section] 668[ ] provides that judgment shall be entered in the judgment-book. There is no other 'entry' of judgments mentioned in the code."); *cf. Old Settlers Inv. Co.* v. *White*, 110 P. 922, 927 (Cal. 1910) ("[T]here is no judgment under section 997 if the clerk does not enter any judgment, but merely records in the judgment docket, in a place where the statute does not provide for the entry of judgments, a document signed by the parties to the action and consenting that a judgment may be entered."). *But see Gossman* v. *Gossman*, 126 P.2d 178, 185 (Cal. Ct. App. 1942) ("The judgment is deemed rendered when the decision is filed; its rendition is a judicial act, its entry is ministerial." (emphasis omitted)). It thus appears that, under California law, a judgment is entered when the court clerk records that judgment in the judgment book or, given § 668.5, its modern equivalents. As such, Experian correctly reported that judgment had been entered against Dennis, even if that judgment had been entered erroneously.[3]

---

[3]The dissent suggests that a conditional stipulation to the effect that a judgment *shall not be entered* if payments are made is somehow evidence that entry *was not made*. Dissent at 5152-53. Implausibly, it further suggests that, viewing the stipulation side by side with the very entry the existence of which the stipulation purports to deny, no reasonable person

**[6]** If anyone was in a position to correct the error, it was Dennis himself. He knew, or should have known, that the case file in the unlawful detainer action contained erroneous or misleading information. He was the only one who could petition the Superior Court to correct the error. Experian certainly had no standing to seek correction of the official file in a case to which it was not a party. Nor would it have known with certainty what form such a correction should take. Nor does the duty to reinvestigate under section 1681(i) involve any more than examination of existing documents; it certainly does not put on the reporting agency the burden to clean up errors in a consumer's credit history that are caused by a third party. Under the circumstances, we are satisfied that defendant's investigation was sufficiently rigorous.

**AFFIRMED.**

---

"could have concluded that there had been a judgment against Dennis." *Id.* In fact, it is hard to see how a reasonable person could have concluded otherwise, as a matter of fact or law.

The dissent's reliance upon *Gossman* is entirely misplaced. Nowhere do we suggest that a judgment was actually made—there is no question that the entry of judgment here was erroneous, nor is there any suggestion that a clerk's erroneous entry of judgment somehow created a judgment. The dissent ignores the importance of the ministerial act of entering judgment, and the reasonable inferences that flow from it. At the same time, the dissent would apparently add to the ministerial act of entry its own separate requirement: placement in the file folder of a copy of the rendered judgment. *See* Dissent at 5152-53. *Gossman* would only be "entirely dispositive" of our case if our holding in any way depended upon the existence of a judgment, or more correctly, upon the creation of a judgment by the ministerial act of a clerk. Rather, we make the modest claim that it was reasonable for Experian to rely upon the only ministerial act that, under California law, records the existence of a judgment.

As we note below, Dennis was the only party who could petition the Superior Court to correct any erroneous entry of judgment in his case. Faced with an error that he was best, if not exclusively, situated to correct, Dennis can hardly use the FCRA to hold Experian liable for failing to unearth this truffle.

KOZINSKI, Circuit Judge, dissenting in part:

I agree that it was reasonable for Experian to rely on the Register entry in compiling its initial report on Dennis's credit history. But once Dennis disputed the accuracy of that record, Experian was obligated to do more. When a consumer disputes an item on his credit report, the reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i. As the Federal Trade Commission has commented, a "reasonable reinvestigation" at this stage requires the agency to "explain to the source [of the information] that the original statement has been disputed, state the consumer's position, and then ask whether the source would confirm the information, qualify it, or accept the consumer's explanation." *See* Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804, 18,823-24 (May 4, 1990).

The "source" here was the Superior Court and the "information" in question was the purported judgment against Dennis. Confirming the accuracy of the information would have required Experian to find a document in the court file that backed up the Register notation and the trial minutes, thereby confirming that a judgment had in fact been rendered. This document would, of course, have been the judgment itself. Had Experian looked for a such a document, it would have found no judgment—undermining rather than confirming the position Experian had taken in the original report.

Experian hired a public records vendor to review the case file, and the vendor found no judgment confirming the Register notation and the trial minutes. The reinvestigation *did* uncover a new piece of information: the written stipulation that expressly contradicted the Register entry. The document clearly states: "*No judgment* so long as payments made. . . . *Entry of judgment stayed*." (Emphasis added). There was nothing ambiguous about this document; it plainly states that there is "[n]o judgment" as long as payments are made, and

that "[e]ntry of judgment [is] stayed." There is no subsequent document that purports to be a judgment against Dennis or lifts the stay. The stipulation was the only legally binding document in the case file; the trial minutes and the Register notation merely purported to summarize what was agreed to in the stipulation. No reasonable person who reviewed these documents side by side could have concluded that there had been a judgment against Dennis. The absence of a judgment in the case file, when considered in light of the information contained in the stipulation, should have caused Experian to conclude that there was no judgment and that the Register entry had been made in error.

The majority mistakenly relies on a series of California cases which stand for the tautological proposition that a judgment is not entered until "it is actually entered in the judgment book." *Wilson* v. *Los Angeles County Employees Ass'n*, 273 P.2d 824, 827 (Cal. Ct. App. 1954); Maj. Op. at 5150 (citing *Wilson* and other cases). These cases are not on point. They say only that a judgment is not of record until it is actually entered. *Wilson*, 273 P.2d at 827. They provide no support for the converse proposition that an entry in the Register can give life to a judgment that does not exist. To test this proposition, consider a situation where the clerk of the court mistakenly enters a judgment rendered in case A under the Register entry for case B. Nothing in the cases cited by the majority suggests that the erroneous entry in case B somehow creates a valid judgment against the defendant in that case.

The majority dismisses with a "*But see*" the only California case directly on point, namely *Gossman* v. *Gossman*, 126 P.2d 178 (Cal. Ct. App. 1942). Maj. Op. at 5150. The *Gossman* court drew a sharp distinction between the rendition of the judgment, which is a judicial act, and the entry of the judgment, which is ministerial. *Gossman*, 126 P.2d at 185. The distinction is crucial to our case. A judgment can only be rendered as a result of a judicial or statutory process—a trial, a summary judgment order, a court-approved stipulation or

the imposition of a default judgment. By contrast, the entry of the judgment is a ministerial function performed by the clerk of court. A ministerial act cannot create a judgment because it is not, in the words of *Gossman*, "a judicial act." Because the person making the entry is not a judge, he lacks the authority to render a judgment. (Clerks are authorized to enter default judgments without prior judicial approval if defendant has been served and files no answer. Cal. Civ. Proc. Code § 585. But the judgment itself is authorized by statute, not by the clerk, who acts in a wholly ministerial capacity. *See Baske* v. *Burke*, 177 Cal. Rptr. 794, 799 (Ct. App. 1981).)

Not only is *Gossman* consistent with the other cases—and hence undeserving of a "*But see*"—it is entirely dispositive of our case because it makes clear that an erroneous entry in the Register cannot bring into existence a judgment that does not exist. Here, the *judicial* act was the stipulation, which was apparently accepted by the court, and the stipulation clearly stated that there was to be no judgment. Nothing that a ministerial employee in the clerk's office might have done to misrepresent the content of that judicial document can possibly turn something that is not a judgment into a judgment.

Kira Williams, a specialist in Experian's consumer affairs division, testified that Hogan gave Experian a copy of the stipulation as part of the reinvestigation. Hogan thus did its job of unearthing the "truffle." *See* Maj. Op. at 5151 n.3. Williams was shown a copy of the document during her deposition. And, while she could not say whether anyone at Experian had considered the stipulation during the course of the investigation, she opined that it would have made no difference. Williams characterized herself as the person "most knowledgeable" about Experian's reinvestigation processes. It is, therefore, reasonable to infer that, even if Experian had been fully aware of the contents of the stipulation, it would have held fast to its original position.

Viewing these facts in a light most favorable to plaintiff, we must assume that Experian made a deliberate decision not

to amend Dennis's report or take further action, even after it obtained documentary proof that no judgment had been rendered. A decision to ignore relevant information during the course of a reinvestigation goes beyond mere negligence and is at the very least reckless. Whether it rises to the level of a "willful" failure to comply with the FCRA is another question —one that should be resolved by a jury. *Compare* 15 U.S.C. § 1681n(a) (subjecting persons who "wilfully" fail to comply with the FCRA to both compensatory and punitive damages), *with* 15 U.S.C. § 1681o(a) (subjecting persons who "negligently" fail to comply to only compensatory damages).

Credit reporting agencies perform a valuable service in our economy. They provide lenders with tools to control credit risks, enabling borrowers to access capital cheaply and quickly. But the consequences of error in this business are significant—as Dennis's case demonstrates. Dennis had hoped to start a business, and he diligently paid his bills on time for years so that he would have a clean credit history when he sought financing for the venture. The only blemish on his credit report in April of 2003 was the erroneously reported judgment. But that was enough to cause several lenders to decline his applications for credit, dashing his hopes of starting a new business.

Recognizing the vast power credit reporting agencies have over the lives and livelihoods of all Americans, Congress required reporting agencies to reinvestigate an individual's creditworthiness when they have reason to believe that a report is inaccurate. Congress left the precise scope of such investigations to the discretion of these agencies, trusting them to adopt adequate procedures to prevent and correct errors. But if the procedures employed by Experian in this case are representative of prevailing industry practice—and if other courts follow the hands-off approach taken by the majority in this case—Congress may come to regret its decision. The result may well be more intrusive regulation of the industry, increasing the agencies' cost of doing business, to

the detriment of the consumers and lenders who rely on their services.