[Civ. No. 11682.   Second Appellate District, Division One.—January 23, 1939.]

MINNIE A. McFAUL et al., Respondents, v. JOHN DECK et al., Appellants.

Derthick, Cusack & Ganahl for Appellants.

Herlihy & Herlihy and F. George Herlihy for Respondents.

DORAN, J.—This is an appeal from a judgment for plaintiffs in a suit to recover the purchase price of certain interests in an oil venture. In the form of an action for money had and received, plaintiffs sought the recovery on the grounds of constructive fraud alleged to have resulted from the failure of defendants to first obtain a permit from the commissioner of corporations of the state of California authorizing the sale.

The issues were tried upon an agreed statement of facts which later, by stipulation, became the findings. The sole question involved is whether, under the facts presented, a permit was necessary to accord validity to the instrument purporting to transfer the interest sold.

It is contended by appellants that the transaction did not come within the purview of the Corporate Securities Act of the state of California for the reason that the instrument of transfer created a tenancy in common in real property between the seller and the buyer. Respondents, contending to the contrary, point out that although the instrument in question uses the term "tenancy-in-common", nevertheless the evidence reveals that the interest conveyed was not a tenancy in common, and that such term was used in an attempt to circumvent the provisions of the Corporate Securities Act.

The agreed statement of facts reveals that the Tujax Oil Company is a California corporation. There was issued and outstanding ten shares of capital stock of the corporation, all of which was issued to and paid for by the defendant John Deck, who, as owner of such stock was authorized to appoint and elect, and did appoint and elect, the board of directors of said corporation. On June 1, 1936, an agreement in writing was executed between the Tujax Oil Company as first party, and plaintiffs Minnie A. McFaul, William D. McFaul and Margueritte McFaul Rasco, as second parties.

The pertinent portion of the instrument is as follows:

"THIS AGREEMENT, made and entered into this 1st day of June, 1936, by and between TUJAX OIL COMPANY, a California Corporation, First Party, and Minnie A. McFaul or Wm. D. McFaul and/or Margueritte McFaul Rasco of Santa Monica, California, Second Parties,

"WITNESSETH:

"WHEREAS, First Party is the owner and holder of an oil and gas sublease recorded in Book 14021, Page 167, Offi-

cial Records of Los Angeles County, California, which Sublease affect . . . and other property, all in the City of Redondo Beach, County of Los Angeles, State of California; and

"WHEREAS, First Party is drilling a well for oil and gas upon Lot Twelve (12), one of the lots above described, which well is now being drilled in the oil zone; and

"WHEREAS, Second Parties have joined First Party in the drilling of said well and have paid One Thousand Two Hundred Dollars ($1200.00) as part of the expense of such drilling;

"NOW, THEREFORE, in consideration of the premises, the parties hereto agree as follows:

"1. First Party has transferred, sold and assigned to Second Parties, and hereby does transfer, sell and assign to Second Parties, one percent (1%) interest in and to said sublease, insofar as said sublease affects the real property hereinabove described, and any well or wells drilled thereon, and in and to any and all oil, gas or other hydrocarbon substances produced and saved from any well or wells drilled thereon.

"2. First Party hereby agrees to complete the well now being drilled thereon without further costs or expense to Second Parties. Second Parties agree that their part of the oil and gas produced from said property and any well or wells thereon shall be sold by First Party at the same price and upon the same terms as First Party's oil and gas are sold, and First Party agrees to pay to Second Parties, one percent (1%) of the gross money paid by the purchaser for all of the oil and gas produced from said well, payment to be made on the tenth day of each month for all oil and gas paid for by the purchaser during the next preceding calendar month, deducting therefrom Second Parties' proportion of the cost of operating said well and paying taxes and other Governmental charges, which deduction First Party guarantees and warrants shall not exceed Eight Dollars ($8.00), for each month.

"3. First Party and Second Parties agree that it is their intent and purpose to create a tenancy-in-common between them in the leasehold estate created by the oil and gas sublease hereinabove mentioned as to the real property herein described, which tenancy-in-common shall continue for and during the continuance of said sublease and it further expressly agreed that Second Parties shall have all of the rights,

benefits, privileges and emoluments of a tenant-in-common in and to said leasehold upon the above described real property.

"IN WITNESS WHEREOF, etc. . . . "

■ Neither the use of a phrase nor the substance of a clause in all cases conclusively determines the legal effect of an instrument. (*Kelly* v. *McDonald,* 98 Cal. App. 121 [276 Pac. 404].) Grammatically a sentence or paragraph may appear definitely to establish the intention of the parties to an extent that by reason of its clarity it would further appear to be impregnable. Nevertheless such a sentence or paragraph may in fact be legally vulnerable. The use, therefore, of the expression "tenancy-in-common", as well as the substance of subdivision 3 of the above-quoted document, does not necessarily, as a matter of law, classify the transaction in question among those unaffected by the Corporate Securities Act. As hitherto declared, "In decisions in this state and in other jurisdictions where it has been contended that a transaction under attack did not come within the Corporate Securities Act because it constituted only a sale of specific real or personal property or an interest therein, the courts have looked through form to substance and found that in fact the transaction contemplated the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers were to share." (*Domestic & Foreign Pet. Co., Ltd.,* v. *Long,* 4 Cal. (2d) 547, 555 [51 Pac. (2d) 73].) See, also, *People* v. *Jackson,* 24 Cal. App. (2d) 182 [74 Pac. (2d) 1085].

■ Among other things, it is evident from an examination of the foregoing document that the Tujax Oil Company expected and intended to maintain dominion and control over the real property described, for the purpose of developing oil and gas thereon. Under such circumstances the instrument is a security within the meaning of the Corporate Securities Act. (See *People* v. *Daniels,* 25 Cal. App. (2d) 64 [76 Pac. (2d) 556]; *People* v. *Yant,* 26 Cal. App. (2d) 725 [80 Pac. (2d) 506].) It is unnecessary to cite authorities in support of the proposition that the sale of such securities constitutes constructive fraud. There is no difference in principle between the attempt to create a tenancy in common and the effort to escape the application of the Corporate Securities Act by the use of deeds conveying small fractions of real property.

It is likewise unnecessary to cite authorities in support of the proposition that the defendants are personally liable as the *alter ego* of the corporation.

The judgment is affirmed.

York, P. J., and White, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1939.