[Civ. No. 12431. Second Dist., Div. One. Aug. 26, 1941.]

GEORGE T. HOWE, Respondent, v. JOHN DECK et al., Defendants; D. H. COYNE, Appellant.

Tanner, Odell & Taft for Appellant.

Raphael Dechter and B. L. Hoyt for Respondent.

DESMOND, J., *pro tem.*—In this case D. H. Coyne has appealed from a judgment ordered by the court in favor of plaintiff, first in the sum of $1,000; also from an order granting a motion for a new and different judgment in the sum of $3,000, as well as from an order to conform judgment to findings; and finally, from the $3,000 judgment. The case arose from certain transactions in connection with oil drilling

upon land in Redondo Beach, upon which Tujax Oil Company, a California corporation, held an oil and gas sublease. John Deck was president, and John Deck, Jr., secretary, of this company. Appellant was local manager of a branch bank which carried its account, and the trial court found that he was also the corporation's agent in three separate transactions, whereby the company undertook to assign a one per cent interest in and to its sublease at the price of $1,000 each, respectively, to the plaintiff, George T. Howe, to his wife, and to their four minor children. The form of document employed in each transaction appears in detail in the case of *McFaul* v. *Deck*, 30 Cal. App. (2d) 424 [86 Pac. (2d) 890], at pages 425 to 427. In that case the instrument, by which the parties agreed that a tenancy in common in the leasehold was established between them, was held to be a "security" within the meaning of the Corporate Securities Act, requiring, as a condition of its validity, a permit for its sale or assignment issued by the Commissioner of Corporations. In the McFaul case, as in the instant case, suit was brought to recover the purchase price, but in that case constructive fraud was alleged to have resulted from the fact that the defendants issued the security without having obtained the permit required by law, while here the fraud alleged is in the form of direct misrepresentation. Originally John Deck and John Deck, Jr., were named as defendants in this case, together with appellant Coyne, but during the trial the cause was dismissed as to the Messrs. Deck, judgment being entered solely against appellant. The Tujax Oil Company had become bankrupt in the fall of 1936.

Prior to the time suit was brought, Mrs. Howe and the minor children undertook to assign to Mr. Howe the interests which had been delivered to them, and the complaint, in causes 1, 3 and 5, sets forth the fraud charged against the defendants in connection with the respective agreements of sale under which the percentage interests were conveyed. Cause 1 alleges, and the court found, that the consent of the plaintiff to the execution of the agreement and to the purchase of the interest was induced through fraud, in that the defendants "represented to the plaintiff that said one per cent (1%) interest so sold and delivered to this plaintiff was sold and issued in conformity with the laws of the State of California and was a good and valid assignment of an interest in and

to said leasehold estate.'' As to Mrs. Howe's purchase, it is alleged in cause 3, and the court found, that consent to the agreement and to the purchase was induced through defendants' fraudulent representation to the purchaser that said one per cent interest in and to said leasehold estate was issued in conformity with and in compliance with provisions of laws of the State of California relative to the issuance of securities. The allegations in cause 5, which the court found to be true, of fraud practiced in connection with inducing consent to the agreement and purchase by the minor children is couched in similar language, ''in that defendants . . . severally represented to the plaintiff's assignor . . . that the said assignment as aforesaid was a good and valid assignment and was issued pursuant to the provisions of the laws of the State of California regulating the issuance and sale of securities.''

As to these various allegations of fraudulent representations, appellant calls our attention to the testimony of Mr. Howe and Mrs. Howe. From the former's examination we quote the following:

''A. Mr. Coyne said that he himself had bought these securities; that he had known Mr. Deck and Mr. Barteaux for a long period of time and was thoroughly convinced of their reliability and the financial stability of old man Deck; and, furthermore, some lawyer by the name of Abrams had talked to Deck, had written the units or the papers connected with this oil deal, and Abrams was one of the leading attorneys of the State, and there was no question in his mind but what everything was in perfect order, and if there had been the least bit of doubt, he said, he would not have put his money into it. . . .

''Q. In other words, he spoke about Mr. Abrams and the fact that he had heard, in effect, about the legality of these documents, before you asked him about their legality?

''A. Yes, sir; he gave me a little talk on that phase of it.

''Q. Then he started the conversation with respect to the legality of these documents, did he?

''A. He may have gone into it in detail when I brought up the point that I understood that there might be trickery. He told me about that.

''Q. Did he tell you that Mr. Deck had told him that a lawyer by the name of Abrams, who was representing Mr. Deck, had said that these documents or securities or papers,

whatever we might call them—that is, the thing that you were to get—were legal in all respects?

"A. As I remember it, Mr. Coyne said that Abrams was the lawyer representing the oil company, and he was one of the best oil lawyers in the country, and had carefully gone over the papers, and there was no question but what they were absolutely legal in every way.

"Q. Did he say that Mr. Abrams had said so?

"A. Yes, sir; he said Abrams had gone over the papers and—

"Q. That Mr. Abrams had said that there was no question about them, is that right?

"A. Well, he said Mr. Abrams had gone over the papers."

Mrs. Howe's testimony was as follows:

"Q. Do you recall the conversation you had with Mr. Howe, Mr. Coyne and yourself in the Bank of America, Santa Monica Branch, at Santa Monica, shortly after the 15th day of May, 1936?

"A. Yes, sir.

"Q. Where did the conversation take place?

"A. At Mr. Coyne's desk.

"Q. Who was present?

"A. Mr. Howe, Mr. Coyne and myself. . . .

" . . . I remember my husband distinctly asking him about them, and wanting to know if they were all right, and he said yes; he assured us that Mr. Abrams had gone all through that, Deck's lawyer; that he was very good and knew the oil business. And Mr. Howe said, 'Are the units we have like yours?' And he said, 'Yes, they are identically the same thing.' . . .

" . . . Q. He told you that Mr. Abrams was Mr. Deck's lawyer, did he?

"A. Yes, sir.

"Q. Did he tell you that Mr. Deck had told him that Mr. Abrams had said that these documents were perfectly legal, or words in substance to that effect?

"A. Yes, sir. . . . "

The examination of the appellant shows the following:

"Q. With respect to Mr. Deck, what did you state?

"A. I told him that Mr. Deck was an honest, reliable man, and had been a successful business man as far as I could tell, and in my opinion was a reliable and honest type of man.

"Q. Did you believe it at that time?

"A. Yes. . . .

"Q. Will you state, as nearly as you can, in substance, what Mr. Howe said to you and what you said to him relative to that subject?

"A. Mr. Howe said that he had been in the Navy most of his life and did not understand legal matters, and asked me how he could tell if these papers that he would receive from the Tujax Company would be legal.

"Q. What did you tell him?

"A. I told him that Mr. Deck had told me that he had taken this matter up with Mr. Abrams, his attorney, and that Mr. Abrams had informed Deck that that conformed to all the necessary requirements.

"Q. Did Mr. Deck tell you that?

"A. Mr. Deck told me that, yes.

"Q. Did you believe it?

"A. Yes.

"Q. Did you believe it at the time that you told it to Mr. Howe?

"A. Yes, I did.

"Q. Had you heard of Mr. Abrams, the lawyer?  Just answer yes or no.

"A. Yes.

"Q. In what connection?

"A. As attorney for oil interests, I had heard his name mentioned.

"Q. You did not know him personally?

"A. I had never met him, no.

"Q. Was there any reason at the time Mr. Deck told you this that you had to disbelieve him in his statement to you?

"A. No."

It appeared at the trial that appellant had received from John Deck three interests in all respects similar to those issued to plaintiff and to the members of his family, and very nearly coinciding with them as to date of issuance.  No cash was paid for these Coyne interests, and the transcript discloses that when the matter was inquired into at the office of the Corporation Commissioner appellant stated that Mr. Deck said "he would like to have me have an interest and offered to give me an interest, and I saw no reason why I should not accept it, and I did."  Appellant denied that he had told Mr. Howe or Mrs. Howe that he had invested $3,000 in the well.

declaring, "I did tell him that the bank had loaned Deck money which he put into the well, but I did not tell him I put in any."

There is nothing in the transcript to indicate that appellant made any statements to any of the Howe children as to the validity of the interest which they purchased, and it clearly appears that after the first well on the leased property "came in" Mr. Howe seriously considered purchasing another thousand-dollar interest from the Tujax Oil Company, discussed the matter with appellant, and was strongly advised by him not to make the investment, since "the first well was then producing, and it did not seem to be doing so well." It also appeared at the trial that, following the first discussion between respondent and appellant concerning the lease and drilling thereon, Mr. and Mrs. Howe, appellant not being present, visited the property frequently, watched the work going on, and engaged the president and other officers and employees of the company in conversation concerning the well then drilling, and finally received the agreements or "interests" directly from the company officers. This was made a matter of affirmative defense, appellant alleging as to each of the investments that an independent or individual investigation concerning the purchase of the agreement was made and that the purchaser dealt directly with the Tujax Oil Company officers in making the agreement. As to each of these affirmative defenses, however, the trial court found that they were untrue.

We have failed thus far to mention causes 2, 4 and 6 of the complaint, each in its first paragraph grounded upon indebtedness for money had and received in the sum of $1,000. Causes 4 and 6 contained the additional allegation of assignment to plaintiff by the purchaser of all right, title and interest in and to the said sum of $1,000 "and that the plaintiff is now the owner and holder of the same." The court found as to each of the common counts that so far as the allegations pertained to defendant Coyne, they were untrue, "for the reason," to quote from respondent's brief, "that the purchase money had not been paid to appellant." As to the allegations of assignment in causes 4 and 6, the court found them to be untrue.

The allegation of assignment of the interest and cause of action of Mrs. Howe and of the minor children set out in

causes 3 and 5 the court disposed of in its findings XI and XVII by denominating them "purported assignments" and declaring that the cause of action was not subject to assignment "and said assignment was void."

From these findings the court drew the conclusions of law: I. That the assignments of one per cent interest in the oil lease were securities within the meaning of the Corporate Securities Act, and the same being issued and delivered without a permit from the Commissioner of Corporations, were and are void. II. That the purported assignments of the causes of action were invalid and said claims and causes "herein attempted to be assigned were not, as a matter of law, subject to assignment." III. That the plaintiff recover from defendant Coyne the sum of $1,000, with interest and costs. Judgment in that amount in favor of this respondent was entered on June 2, 1939.

On June 8, 1939, a notice to vacate the judgment, to correct the conclusions of law and to enter a new and different judgment in the sum of $3,000, was filed. The ground specified was "that conclusion of law No. II is incorrect and erroneous, and is not consistent with findings Nos. XI and XVII, but is contrary thereto." The trial judge signed an order dated July 17 granting the motion to correct the conclusions and to enter a new and different judgment of $3,000, reciting that said motion was presented in accordance with sections 663 and 663a of the Code of Civil Procedure. The record shows that on July 25 the same order was entered in the minutes *nunc pro tunc* as of July 17, and included in that entry was the decision of the court denying defendants' motion for a new trial. On August 2 the court signed an "Order to Conform Judgment to Findings," reciting that the conclusions of law appeared to be inconsistent with the findings to such an extent as to materially affect the substantial rights of the plaintiff and entitle him to a different judgment, and accordingly it was ordered that the conclusions be corrected in the manner specified in said order. Conclusion II, in the corrected form, reads as follows: ·

"That the purported assignment of the causes of action herein sued upon from Mrs. George Tyler Howe, George Tyler Howe, Jr., Caroline H. Howe, Edgar B. Howe, and John W. Howe to the plaintiff herein are good and valid assignments, and that the claims and causes of action thereby assigned are now vested in and belong to the plaintiff herein."

Conclusion III, as corrected, was to the effect that plaintiff was entitled to recover $3,000 from defendant Coyne. It was further ordered that the judgment for $1,000 be vacated and that plaintiff have and recover the sum of $3,000 with costs, the new judgment to be entered as of June 2, 1939, the date upon which the original judgment was entered. On August 2 an additional order was signed by the trial judge, namely, the new judgment for $3,000.

█ It will be seen from the foregoing that plaintiff made an earnest effort to secure proper entry of a judgment of $3,000, but, in our opinion, the effort failed, for the findings still stand unchanged upon the record and do not support the amended conclusions or the new judgment. Section 663 of the Code of Civil Procedure, under which plaintiff proceeded after entry of the $1,000 judgment, provides that a judgment may be vacated or a different one entered when the conclusions are inconsistent with the findings. Examination of this record, however, discloses that conclusion II as originally entered was altogether in accord with and supported by the very findings which were claimed to be contrary, namely, findings XI and XVII. As the record stands at present, the increase of $2,000 in the judgment is based upon and supported by conclusion II (as corrected) that the assignments by Mrs. Howe and by the Howe children are good and valid assignments, and that the claims and causes of action conveyed thereby belong to the plaintiff, whereas findings XI and XVII declare exactly to the contrary. Section 662 of the Code of Civil Procedure provides that a trial judge in ruling upon a motion for a new trial may change or add to the findings or modify or vacate a judgment. In the instant case, there was an opportunity to take such action, for, as we have seen, the court was called upon to determine upon defendants' motion whether a new trial should be granted, and decided that question adversely on August 2, without making any change in the findings, although by the same order he reaffirmed his earlier decision to modify the judgment, but recited that such action was taken under sections 663 and 663a of the Code of Civil Procedure. As noted in the opening paragraph of this opinion, the appeal in this case is not alone from the judgments of $1,000 and $3,000, but also from the order granting the motion made under section 663 for a new and different judgment and from the additional order

to conform judgment to findings. Section 663a of the Code of Civil Procedure provides that the order granting the motion for a new and different judgment may be reviewed on appeal, and by section 963 of the same code an appeal lies from any special order made after final judgment. The final judgment in this case and the order to conform judgment to findings were signed on the same day, August 2, but the judgment was docketed on August 7, one day earlier than the order conforming. It may be that the latter order is one made after final judgment, but if not, we consider it supplemental to the other erroneous order by which the conclusions were ordered amended, and we hold that the appeal is well grounded as to both, and that they must be reversed.

We realize that under section 956a of the Code of Civil Procedure appellate courts are authorized in nonjury cases to make findings of fact contrary to or in addition to those made by the trial court, but are not inclined to take such action in this case, since it appears from the state of the original pleadings that a new trial should be ordered.

Respondent argues that a fiduciary relation existed between appellant and respondent, but he failed to allege and the court made no finding that such relationship existed. The appellant was not a party to the contracts under which the interests in question were purchased. His liability for the part he played in the transactions, therefore, must be determined by sections 1709 and 1710 of the Civil Code, rather than by section 1572 of that code, which governs fraud as between contracting parties. Under section 1709 of the Civil Code, recovery may be had from "one who willfully deceives another with intent to induce him to alter his position to his injury or risk," and the elements of fraudulent deceit are itemized in section 1710. They are discussed in 12 Cal. Jur. at page 724, where the following appears:

"When a cause arises out of an alleged false representation, the plaintiff, in order to prevail, must ordinarily show that the representation was as to a material fact; that such fact was false and known to be false by the party making it, or else recklessly made, or without reasonable grounds for believing its truth; that the representation was made with intent to induce the other party to do or refrain from doing some act; that it was relied upon by the other party—in other words, that such other party was actually misled and

deceived and induced by it to act or refrain from acting; that in so acting or refraining from acting he was ignorant of the falsity of the representation and reasonably believed it to be true; and that he thereby suffered damage or injury. The absence of any one of these elements is generally fatal to a recovery.''

From each of the three causes upon which the judgment for $3,000 rests, certain of these elements were omitted. For example, in causes 3 and 5, involving purchases by Mrs. Howe and by the Howe children, respectively, there is no allegation that the representation claimed to have been made by defendants was made with intent to deceive or that the purchase was made in reliance upon such representation, nor is there in any of the three causes an allegation that appellant did not believe in the truth of the statement attributed to him, or that he asserted as a fact an untruth without having any reasonable ground for believing it to be true. It may be argued that these faults should have been criticized by means of a special demurrer and are not properly raised on appeal. Under the special circumstances of this case, however, where originally the contracting parties were defendants jointly with this appellant, and now by reason of the dismissal filed as to the principals, John Deck and John Deck, Jr., appellant remains as the sole defendant, we believe that the contending parties should be placed in a position where upon redrafted pleadings they can present the issues of their cause. Therefore, on the case being remanded, the plaintiff, if so advised, may amend his complaint to state a cause of action against appellant. If the complaint be not amended, judgment should be entered for the defendant, this appellant.

Since it does not appear that the findings are sufficient to support either judgment, such judgments are and each of them is reversed, together with the order for a new and different judgment and the order entitled ''Order to Conform Judgment to Findings.'' The cause is remanded for further proceedings in accordance with this opinion.

Doran, Acting P. J., and White, J., concurred.