[Civ. No. 12796. Second Dist., Div. Three. May 22, 1942.]

OLIVE MAGDELINE GOSSMAN, Appellant, v. OTTO E. GOSSMAN et al., Respondents.

Morris Lavine for Appellant.

Victor H. Harvey for Respondents.

SCHAUER, P. J.—This matter is before us on an appeal by plaintiff from (1) an order granting defendants' motion for a new trial, and (2) an order denying plaintiff's motion to vacate such order granting a new trial. As three judgments were successively entered in this case, the second superseding the first, and the third superseding the second after it was vacated on plaintiff's motion, and as proceedings in connection with each of the three must be considered in disposing of the questions involved, a chronological epitome of such proceedings will assist in depicting the situation.

### CHRONOLOGY OF PERTINENT PROCEEDINGS

Findings of fact and conclusions of law filed. .August 18, 1939
First judgment entered...................August 21, 1939
Defendants' motion for new trial (ad-
 dressed to first judgment) filed...........August 28, 1939
Defendants' motion for new trial denied,
 judgment being ordered modified........October 17, 1939
Second judgment entered.................October 19, 1939
Plaintiff files motion for new trial (ad-
 dressed to second judgment) and notice
 of intention to move for different judg-
 ment under Code Civ. Proc., secs. 663
 and 663a .............................October 30, 1939
Plaintiff's motion for new trial denied
 and motion for different judgment
 granted ............................December 1, 1939
Third judgment entered.................February 7, 1940
Defendants' motion for new trial (ad-
 dressed to third judgment) filed........February 21, 1940
Defendants' motion for new trial granted.....April 1, 1940
Plaintiff's motion to vacate order of April
 1 filed ................................April 23, 1940
Plaintiff's motion to vacate order of April
 1 denied .............................May 1, 1940

Plaintiff's notice of appeal from order
 granting defendants' motion for new
 trial and from order denying motion to
 vacate same, filed.........................May 9, 1940

## MATERIAL FACTS

It is important to note that this is a divorce action; that there are no children of the union; that by the *second judgment,* which is not materially different from the *first,* plaintiff was awarded an interlocutory decree of divorce on the ground of extreme cruelty and that community property of aggregate value in excess of $50,000 was divided between plaintiff wife and defendant husband, plaintiff being given the family dwelling house and furniture, an automobile, some shares of stock in a corporation (value $1,800), $1,000 cash, and the defendant being ordered to pay plaintiff $100 per month for two years and until the further order of the court, and the defendant husband was awarded all of the remainder of the property of the spouses including his one-third interest in a partnership of which he was (and at the time of his marriage to plaintiff had been) a member. The *third judgment* entered on plaintiff's motion, purportedly without taking additional evidence, was radically different from both the *first* and the *second judgments.* By it plaintiff was awarded substantially *all* of the community property (of a value in excess of $50,000) *including the husband's interest in the business and assets of the partnership, his sole source of income,* and the husband was awarded property of the value of only $1,600 and was also ordered to pay plaintiff's attorney's fees in the sum of $790.

The order granting a new trial on defendants' (certain other parties were joined as defendants) motion after entry of the third judgment limited the issues for the new trial "to the matter of community property." ▮ Such order was by minute entry timely entered, and recited that "motion for new trial is granted on the grounds of insufficiency of the evidence and errors of law made during the trial. . . ." This order, so entered in the minutes, meets the requirements of Code of Civil Procedure, section 657, as amended in 1939 (*Cox* v. *Tyrone Power Enterprises, Inc.,* (1942) 49 Cal. App. (2d) 383 [121 P. (2d) 829]). It was made by the Honorable Emmet H. Wilson, Judge of the Superior Court of Los Angeles County, the previous trial and new trial proceedings having been had before the Honorable Raymond McIntosh,

Judge of the Superior Court of Sierra County, who had been temporarily assigned to Los Angeles County but who was absent from that county at the time of the presentation of defendants' motion for a new trial as addressed to the third judgment. From the facts recited it seems likely that one of the purposes in making the new trial order was to afford the court an opportunity to re-examine the issue of fact as to what constituted a fair and equitable division of the community property. Furthermore, it may be that the court felt that the evidence should be re-examined on the issue of fact as to whether defendant husband's interest in the partnership, which plaintiff admitted he owned before his marriage to her, was of community or separate character in whole or in part. On defendants' first motion for a new trial such motion may well have been denied as to this issue because the defendant husband *was not prejudiced thereby* since under the decision then outstanding and the judgment (*first judgment*) based thereon that property was awarded to him. But on the hearing of the motion addressed to the *third judgment* the situation was different; all of this property had been awarded to plaintiff.

## APPELLANT'S CONTENTIONS

Plaintiff contends (1) that the trial court was without jurisdiction to entertain or determine defendants' motion for a new trial made after the third judgment was entered, her theory being that the court's jurisdiction to consider and grant a motion of defendants for a new trial was exhausted when it entertained and denied defendants' motion made after the *first* judgment was entered; (2) that the decision on defendants' first motion for a new trial became the law of the case and was binding on the court. Plaintiff amplifies her position by pointing out that the trial court filed only one set of (formally entitled) findings of fact and conclusions of law—that which preceded the first judgment—and asserts that the second and third judgments were predicated upon the same original findings and conclusions except as the conclusions were altered (*Roberts* v. *Hall,* (1905) 147 Cal. 434, 437 [82 Pac. 66]) as evidenced by the judgments. Therefore, the plaintiff argues, since the findings of fact remained the same, and since the court determined on defendants' original motion for a new trial that defendants were not aggrieved by the facts found and were not entitled to a re-

examination of any issue of fact involved therein, the power of the court to consider that matter has been exhausted and it is rendered res judicata.

Furthermore, it is urged on behalf of plaintiff, that the trial court in vacating the second judgment and ordering the third one entered merely exercised judicial discretion and proceeded exclusively under sections 663 and 663a of the Code of Civil Procedure, which provide for a motion to vacate a judgment, to correct erroneous conclusions of law and to enter a new judgment in conformity with the corrected conclusions. From an order for such a judgment or from the new judgment itself an appeal may be taken (*California Delta Farms* v. *Chinese American Farms*, (1927) 201 Cal. 201, 203 [255 Pac. 1097]), but these sections contain no such provision as that found in section 662 of the Code of Civil Procedure, which declares the powers of a trial court on a motion for new trial to include the right to "modify the judgment, in whole or in part" and also provides that "Any judgment thereafter entered shall be subject to the provisions of section 657 and 659 of this code," said sections 657 and 659 being those declaring the grounds on and the procedure by which a new trial may be obtained. From this position plaintiff steps to her next argument, which is that a motion for a new trial is an inappropriate remedy where the relief sought is not a re-examination of an issue of fact but the correction or modification of conclusions of law. Plaintiff's propositions of law, generally speaking, are not challenged, but neither of her points can be sustained on the record before us and the argument in amplification thereof proves to be specious in that the assumed factual premise is not sound. The slight modifications of the *first judgment* as evidenced by the *second* are immaterial to this appeal and may be disregarded, but the *third* judgment, as previously mentioned, is materially different from either the first or the second. It involves not merely different conclusions of law or a re-exercise of judicial discretion based on established facts but a substantially different finding of facts (stated within itself) on the issue of what constituted a fair and equitable division of the community property of the parties.

## The Findings of Fact and Conclusions of Law

In the findings of fact and conclusions of law originally filed the court found as a fact "That $100 per month is a reasonable sum for plaintiff's support." Furthermore, in the

same document, but mislabeled under the heading "Conclusions of Law," but which heading is not controlling (*Linberg* v. *Stanto*, (1931) 211 Cal. 771, 776 [297 Pac. 9, 75 A. L. R. 555]), the court found "That the plaintiff is entitled to be awarded as her sole and separate property of the community property enumerated in the foregoing findings, the following:

"(a) One dwelling house located at 860 West Florence Avenue, in the City of Los Angeles, County of Los Angeles, State of California, and the parcel of real property to which said house is affixed, free and clear of all delinquent Home Owner's Loan payments to date;

"(b) Household furniture and furnishings located at 860 West Florence Avenue, of the approximate value of $300;

"(c) One 1934 Buick sedan of the value of $200, free and clear of all encumbrance;

"(d) Seven hundred (700) shares of stock in the Manchester Avenue Company, formerly the Potrero Country Club, of the value of $1,800, to be free and clear of all encumbrances;

"(e) One thousand dollar ($1,000) lawful money of the United States, to be paid by said defendants, and for which payment each of said defendants and said partnership business and real estate should be separately and jointly liable;

"(f) Payment of all sums which this Court has heretofore during the pendency of this action ordered said defendant Otto E. Gossman *go* pay to said plaintiff and for which payment each of said defendants should be individually and jointly liable;

"(g) Payment to plaintiff or plaintiff's attorney, of the sum of $750 as attorney's fees, and that each of said defendants be individually and jointly liable for the payment of said sum;

"(h) That the plaintiff *w*hould receive from the defendants the sum of $100 per month for a period of two years, and until the further order of court, said payments to begin on the 1st day of August, 1939."

It is sometimes difficult to distinguish between findings of fact and conclusions of law. ■ As pointed out in 24 Cal. Jur. at page 961, and as reiterated in many decisions, "A conclusion of law does not lose its characteristic as such because placed among the findings of fact, and a finding may be regarded as one of fact although mistakenly placed among the conclusions of law." In *Levins* v. *Rovegno*, (1886) 71 Cal.

273 [12 Pac. 161], at pages 275-276, is found an able exposition of the distinction between findings of fact and conclusions of law:

"The line of demarkation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases.

"It is quite easy to say that the ultimate facts are but the logical conclusions deduced from certain primary facts evidentiary in their character, and that conclusions of law are those presumptions or legal deductions which, the facts being given, are drawn without further evidence.

"This does not, however, quite meet the difficulty. We deduce the ultimate fact from certain probative facts by a process of natural reasoning. We draw the inference or conclusion of law by a process of artificial reasoning but [t]his last process is often in such exact accord with natural reason, that the distinction is scarcely appreciable.

"If ultimate facts were found only from direct evidence to the very fact, the distinction between them and conclusions of law could be easily drawn, but as they are to a great extent presumed from the existence of other facts, they are conclusions reached by argument, by reason,—are results deduced from an inferential process, in which the evidentiary facts become the premises and the ultimate fact the conclusion; and this process by which ultimate facts or presumptions of fact are reached differs from presumptions of law only in this, that the latter 'are reduced to fixed rules, and constitute a branch of the particular system of jurisprudence to which they belong'; the former, being 'merely natural presumptions, are derived wholly and directly from the circumstances of the particular case by the common experience of mankind, without the aid or control of any rules of law whatever.' (1 Greenl. Ev., secs. 44-48.) "

In *Estate of Woods*, (1937) 23 Cal. App. (2d) 187 [72 P. (2d) 258], at 190, we find the following:

"Under the heading, conclusions of law, the following appears: 'That an order should be rendered in this cause adjudging and declaring that the following described properties were, at the time of the death of Timothy L. Woods, the community property of Timothy L. Woods and Hattie E. Woods, his wife (enumerating the parcels).' This statement should have been placed among the findings of fact. It is said in *Estate of Hill*, 167 Cal. 59, 63 [138 Pac. 690, 692] : 'But an allegation or finding that a person is the owner of

certain property is none the less an allegation or finding of an ultimate fact. (*Smith* v. *Acker*, 52 Cal. 217; *Murphy* v. *Bennett*, 68 Cal. 528 [9 Pac. 738]; *Gill* v. *Driver*, 90 Cal. 72 [27 Pac. 64].) And the same considerations apply to an averment or finding that certain property owned by a married person is separate or community property. The evidence from which this ultimate fact is determined is not to be set forth in a pleading nor need it be found by the court.' In *Maskuns* v. *Maskuns*, 93 Cal. App. 27 [268 Pac. 1093], it was held that the trial court determined an ultimate fact when among the conclusions of law it decreed 'that the remaining one-half of said property is the community property of this plaintiff and defendant.' It was pointed out that 'a finding of fact loses none of its force merely because it has been inadvertently included among the conclusions of law.' (*Matter of Forrester*, 162 Cal. 493 [123 Pac. 283].)' "

So also it is held that a finding of indebtedness is not a conclusion of law, but the statement of an ultimate fact (*Nisbet* v. *Rhinehart*, (1935) 2 Cal. (2d) 477, 482 [42 P. (2d) 71]). ■ From the rules stated and illustrated in the aforementioned cases it follows that the determination by the trial court in a divorce action of the character of property and the amount to which each party is entitled, when a decree is granted on the ground of extreme cruelty, involves a finding of fact rather than a conclusion of law.

The document labeled Findings of Fact and Conclusions of Law was not itself directly amended as respects either findings of fact or conclusions of law but the court in the *third judgment* proceeds to find and adjudicate "that of said community property [described in the complaint] the plaintiff is awarded and she is adjudged to be the owner of the following." Here follows a description of substantially all of the property described in the pleadings. Whereas the *second judgment* had awarded property of a value of nearly $50,000 to the defendant husband the *third judgment* awarded to plaintiff *all of the property of the parties except* for one lot valued at $1,100 and one automobile valued at $500—an aggregate of only $1,600 in value left to the defendant and against that, or out of or from some unknown source, he was ordered to pay plaintiff an additional sum of $790 for attorney's fees. The award to the plaintiff wife by the third judgment stripped defendant of substantially all his resources including his one-third interest in the partnership which, as before noted, he

had possessed before marriage and which constituted his sole source of income.

### CHARACTER OF PROCEEDINGS BASIC TO THIRD JUDGMENT

By what judicial process the trial judge on the same trial arrived at the third judgment after having previously arrived at the first and second the record is mystifying. Obviously the drastic change from the *second* judgment to the *third* judgment must have been based on something more potent than any correction of conclusions of law. ■ By the provisions of section 146 of the Civil Code it was the duty of the court, on dissolution of the marriage on the ground of extreme cruelty, to assign the community property "to the respective parties in such proportions as the court, *from all the facts of the case, and the condition of the parties,* may deem just." (Italics added.) Presumptively the assignment of the property found to be community in character was made in the first and second judgments after determination of "all the facts of the case, and the condition of the parties." A *just* decision of it depended not on the whimsy of the trial judge but on the exercise of judicial discretion based on "all the facts of the case, and the condition of the parties."

■ The character of the proceeding leading to the third judgment is not to be confused by loosely ascribing it to the power of judicial discretion. Courts have often asserted that such power is broad and inclusive. That assertion is true, but it is true only within the limits of fixed legal principles (*Brill v. Fox*, (1931) 211 Cal. 739, 743 [297 Pac. 25]). Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion*. Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective "judicial." To exercise that power all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent, and just decision. On that basis then, and guided thereby, it gives latitude to the trial judge to express his own convictions in the declaration of rights and application of remedies.

Mr. Bowers, in his "Judicial Discretion of Trial Courts," (1931) section 10, pp. 14 and 15, defines the term as follows: "It is that power of decision, exercised to the necessary end

of awarding justice, and based upon reason and the law, but for which decision there is no special governing statute or rule. . . . Discretion implies that in the absence of positive law or fixed rule, the judge is to decide by his view of expediency or of the demands of equity and justice.''

The term ''judicial discretion'' was defined in *Bailey* v. *Taaffe*, (1866) 29 Cal. 422, 424, as follows: ''The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.''

The Supreme Judicial Court of Massachusetts defined the term in *Davis* v. *Boston Elevated Ry. Co.*, (1920) 235 Mass. 482 [126 N. E. 841, 843], as follows: ''By such expression is implied absence of arbitrary determination, capricious disposition, or· whimsical thinking. An exhibition of ungoverned will, or a manifestation of unbridled power is not the use of discretion. The word imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion, enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy nor warped by prejudice nor moved by any kind of influence save alone the overwhelming passion to do that which is just.''

In his work, ''The Nature of the Judicial Process,'' Justice Cardozo wrote (p. 141): ''The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' Wide enough in all conscience is the field of discretion that remains.'' Certainly a decision rendered in disregard of fundamental facts upon which the parties were relying or based on facts not adduced at the trial, and unregulated by those principles which are recognized as being inherent in the true concept

of judicial discretion would not be a *judicial decision* in the true sense.

■ A motion for *correction of conclusions of law* (which is the gravamen of proceedings under sections 663 and 663a of the Code of Civil Procedure) based on established facts does not call for a re-exercise of judicial discretion as to what is a *just* division of property; it calls only for the amendment of erroneous conclusions of law. ■ The determination of the division of community property in a divorce action based on extreme cruelty is not a mere conclusion of law; it necessarily entails consideration of "all the facts . . . and the condition of the parties." (Civ. Code, § 146). Evidence which might well have been sufficient to sustain the *first* and *second* judgments could fall far short of supporting the *third;* in fact the conclusion seems well nigh inescapable that *if the evidence was sufficient to justify the decision portrayed by the first and second judgments it must have been insufficient to justify the third.* The resolution of issues which had not been prejudicial to defendant husband under the first or second judgments became distinctly prejudicial under the third. Yet plaintiff is urging the proposition that because defendants had asked and been denied a new trial with respect to the first judgment, they should be barred from seeking a new trial as against the decision expressed in the third. Such proposition cannot be sustained under the facts here.

■ A new trial is "a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee." (Code Civ. Proc., § 656). It is implicit in the proceeding that it be *"after a trial and decision."* Manifestly it is not until after a *decision* has been rendered that a party can ascertain whether he is aggrieved thereby or wants a new trial. If he does consider himself aggrieved the issues which he wants re-examined are those involved in the particular decision to which he objects, and it is only in the light of *that decision* that the correctness of the determination of those issues can be tested (see *Bond* v. *United Railroads,* (1915) 169 Cal. 273, 276 [146 Pac. 688]).

■ The "decision" in a case tried without a jury normally consists of written findings of fact and conclusions of law, separately stated, and filed with the clerk (Code Civ. Proc., § 632); such "decision" is the actual determination of the lawsuit. ■ The judgment is the formal expression and evidence of that decision and should be *entered* in conformity with it (Code Civ. Proc., § 664). ■ The judgment is deemed *ren-*

*dered* when the decision is filed; its *rendition* is a judicial act, its *entry* is ministerial (*First National Bank of Fresno* v. *Dusy,* (1895) 110 Cal. 69, 75-76 [42 Pac. 476]). It has already been remarked that the *decision* (written findings of fact and conclusions of law, separately stated) originally filed by the trial court preceding entry of the *first judgment* herein has never been expressly amended or superseded either by interlineation or by the filing of a new document entitled "Findings of Fact and Conclusions of Law" and the court's two subsequent decisions, insofar as they differ from the first decision, are evidenced only by minute entries and by the formal written judgments which were signed and filed.

It must also be pointed out, as further evidence of the true character of the proceedings leading to the third judgment, that in the last two paragraphs of such judgment defendant husband "is also ordered to *restore* and deliver to plaintiff . . . the said seven (7) shares of stock in the Manchester Avenue Company, formerly the Potrero Country Club. . . .

"Defendant is also ordered to *restore* to Mrs. Gossman all community furniture taken from the premises at 860 West Florence Avenue . . . since the filing of the complaint herein, or in lieu thereof, to pay her the sum of One Hundred Dollars ($100) in cash." The original complaint does not contain and the record discloses no amended or supplemental complaint containing any averments appropriate to the relief so ordered and this third judgment, entered February 7, 1940, solemnly recites that it is based on evidence taken at the original trial, beginning "February 28, 1939, and continued to and including March 2nd, 1939" and that it is "in accordance" with the "findings of fact and conclusions of law" that such judgment is rendered. An inspection of the original formally entitled Findings and Conclusions discloses no basis for the orders mentioned. The obvious and necessary conclusion is that evidence was taken or at least that the evidence already received was re-examined by the trial judge on plaintiff's motion for a new trial and for a new and different judgment which resulted in the third judgment.

We have depicted at length the seeming irregularities in the various proceedings in connection with the three judgments because it was that record which was presented to the judge on defendants' motion for a new trial after the *third judgment* was entered. ▮ His order granting the motion is presumed to be correct and his discretion in the premises,

if the motion was entertainable at all, was a broad one (*Estate of Armstrong,* (1937) 8 Cal. (2d) 204, 209 [64 P. (2d) 1093]; *Laverne* v. *Dold,* (1936) 17 Cal. App. (2d) 180, 183 [61 P. (2d) 497]; *Pettigrew* v. *O'Donnell,* (1939) 32 Cal. App. (2d) 502, 503 [90 P. (2d) 93]). There is no contention that his order was erroneous if he had jurisdiction to make it and was not bound by the law of the case. In view of the perplexing character of the record before us as to the procedure by which the third judgment was reached this case impresses us as being one in which the presumptions supporting the trial court's grant of a new trial on the probably more inclusive record before it are entitled to particularly great weight.

From what has been recited it appears that as a basis for the *third judgment* plaintiff filed and presented her *motion for a new trial* as well as her motion under Code of Civil Procedure sections 663 and 663a to correct the *conclusions of law,* vacate the prior judgment, and enter a new and different judgment. The record discloses that plaintiff's motion for a new trial was denied and her motion under sections 663 and 663a was granted. But this does not mean that the order modifying and changing the judgment was not made pursuant to the authority vested in the trial court on a motion for new trial by the terms of section 662 of the Code of Civil Procedure. The authority, within the limits stated, may be exercised *in ruling on the motion* whether it be granted or denied. That section provides that ''In ruling on such motion [for a new trial] in a cause tried without a jury, the court may . . . *change or add to the findings, modify the judgment,* in whole or in part, *vacate the judgment,* in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and *reopen the case for further proceedings and the introduction of additional evidence* with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered. *Any judgment thereafter entered shall be subject to the provisions of sections 657 and 659 of this code.*'' (Italics added.)

 In view of the fact that, as heretofore shown, the court, on hearing plaintiff's motions, and prior to the rendition of the *third judgment,* evidently did reopen the case and receive further evidence or at least did re-examine the evidence before it—a procedure which it could not follow under sections 663

and 663a (*Stanton* v. *Superior Court*, (1927) 202 Cal. 478, 487 [261 Pac. 1001]; *Jones* v. *Clover*, (1937) 24 Cal. App. (2d) 210, 212 [74 P. (2d) 517]; *Howe* v. *Deck*, (1941) 46 Cal. App. (2d) 569, 577-578 [116 P. (2d) 155])—it becomes obvious that the court was proceeding under section 662 and that the *third judgment* is subject to the provisions of Code of Civil Procedure sections 657 and 659. ■ Likewise it is obvious that the ruling of the trial court denying defendants' original motion for a new trial as addressed to the first judgment has no application here. Under the circumstances shown, the subsequent third judgment superseded for all purposes the prior judgments (*McCaleb* v. *McCaleb*, (1917) 177 Cal. 147, 152 [169 Pac. 1023]; *Amell* v. *Amell*, (1937) 10 Cal. (2d) 153, 155 [73 P. (2d) 888]). The trial court had jurisdiction to entertain defendants' motion for a new trial addressed to the third judgment and it was not bound by any prior ruling in the case.

What has been said herein effectively disposes also of plaintiff's appeal from the order denying her motion to vacate the order granting defendants' motion for a new trial. Both the order granting the new trial and the order denying the motion to vacate the same are affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1942.