[Civ. No. 19947. Second Dist., Div. Three. May 19, 1954.]

HOPE STAGLIANO, Appellant, v. JAMES STAGLIANO, Respondent.

James B. Fredericks for Appellant.

Walter W. Heil for Respondent.

WOOD (Parker), J.—Appeal by plaintiff (wife) from an order modifying a judgment regarding the custody and support of a minor child.

On August 19, 1947, plaintiff obtained an interlocutory judgment of divorce which stated that a property settlement agreement of the parties was approved. In said judgment the custody of the minor daughter, 5½ years of age, was awarded to plaintiff, subject to defendant's right of reasonable visitation; and it was ordered that defendant pay to plaintiff, pursuant to the property settlement agreement, $200 a month for support of the child. On August 26, 1948, a final judgment of divorce, which included those provisions as to custody and support, was entered.

On April 21, 1953, upon application of defendant, the court made an order directing plaintiff to show cause why said provisions relating to custody and support of the child should not be modified by reducing the amount of support, and allowing defendant to have custody of the child during school vacation periods. Defendant had remarried and was

living with his wife and 6-months-old daughter. (The attorney for plaintiff stated, at the hearing herein, that defendant lives in Massachusetts.)

The matter was contested. On May 18, 1953, the court made an order, that plaintiff have custody of the child subject to defendant's right of reasonable visitation, provided that "defendant' shall have physical custody of said child for a period of four consecutive weeks between July 1 and August 31 in each year, without interference by plaintiff, defendant to pay in advance the cost of first class round trip transportation for said child by air from Los Angeles, California, to place of such visitation"; and that commencing June 1, 1953, defendant shall pay to plaintiff for support of the child $150 a month except for the period of four weeks each year when she is in the custody of defendant.

Appellant contends that the court abused its discretion in modifying the order regarding custody and support. She argues that there was no evidence which would warrant such modification.

The child was 11 years of age at the time of the hearing herein. She has always resided with plaintiff in Los Angeles and, at the time of the hearing herein, she and plaintiff were living at the home of plaintiff's father in Los Angeles. Defendant is a horn player in the Boston Symphony Orchestra. In 1951, defendant was delinquent more than $4,000 in his payments for support. On November 15, 1951, plaintiff and defendant entered into a written agreement which provided that beginning January 1, 1952, defendant should pay plaintiff $200 a month for the child's support; and that so long as defendant continued to make said payments, plaintiff would take no action to enforce payment of the amount past due. At the time of the hearing on the order to show cause herein, defendant was delinquent again in the payments. According to defendant's testimony $200 was past due, and according to plaintiff $815.40 was past due.

Defendant testified that under his present circumstances he is able to pay $100 a month for support; since 1947 his living expenses and taxes have increased, and his salary has decreased; he pays $352 a year for life insurance, in which policies the child is beneficiary (pursuant to property settlement agreement); he is the sole provider for his present family consisting of his wife and a child; his gross income for each of the past four or five years has been over $11,000. According to a document (Exhibit B), prepared

by defendant's accountant, defendant's gross income for 1952 was $11,854.53, and his expenses were $15,231.35. The expenses included $2,027.07 for withholding tax, $2,400 for child's support as ordered by court, and $352 for insurance. Said document showed a deficit of $2,657.35, after deducting $719.47 for depreciation. Defendant testified further that when he was in Los Angeles he had "full rights" to see the child (referred to hereinafter as Hope); her grandfather's home (where she lives) is quite an elaborate place; he (defendant) discussed with his wife the matter of Hope visiting them, and his wife is "very much in accord"; he asked plaintiff many times to have Hope visit him in the East, and each time there was some excuse why she could not come; until the day before the hearing he had not seen her for five years; he is unable to come to Los Angeles to see her because it would take him away from his family and his work, and it would be easier financially if she came East; Hope told him (on the day of the hearing) that she would like to come to visit him but she would like for her mother to come too. He testified further that from time to time he is sent to other cities to conduct auditions on behalf of the orchestra; the last tour was from Boston to Chicago and was for 13 days; they did make such tours each year but have not made them lately because they conduct the auditions on their concert tour.

Plaintiff testified that at the time of her divorce from defendant and for approximately three and one-half years thereafter, Hope attended a private school; plaintiff was unable to keep her in the school after defendant became delinquent in his payments, and since that time she has attended public school; she has been accepted again by the private school (Marlborough) upon the condition that she attend summer school—that term being from July 6 to July 31; Hope's expenses have increased since the divorce, and she now needs $300 a month; plaintiff has records and receipts showing that, from July, 1947, through April, 1953, she has paid expenses for Hope in the amount of $14,252.84; she still owns the house which she received under the property settlement agreement, and it is rented for $380 a month. Plaintiff testified further that every time she wrote to defendant, she urged him to come to see Hope; defendant had asked that Hope come to visit him but he had never made any suggestions as to how she would get there; Hope has never been away from home (overnight), except on two occa-

sions—once when she was at Yosemite for three days, and at another time when she was with her godmother for a few days.

Defendant did not present any evidence which purported to describe the house or place where he lives. The only evidence regarding his dwelling place was testimony implying that he lived in Boston. There was no evidence regarding the living conditions which prevail in his home. He testified that his present wife is a singer but he gave no information regarding her ability to supervise or care for Hope. There was no evidence as to what supervision or care Hope would have when he was performing his duties with the orchestra. According to the written report of his accountant his expenses during the year preceding the hearing were about $2,600 more than his income. In his affidavit in support of his application for the order to show cause herein, he stated that his earnings ''with his increased cost of living and income tax do not permit him to maintain a reasonable standard of living for his present family.'' It thus appears that it was not shown what the home environment would be if Hope were to go to defendant's home. During the hearing the court asked plaintiff the following question: ''Do you have any reason to believe her father's home in the east is not a fit and proper home for your daughter? Plaintiff answered: ''I am sorry to have to bring this into it, but I divorced Mr. Stagliano because the environment in our home and his companions and living habits were so intolerable that I did not feel they were fit for me.'' The court then said: ''You know nothing about his present companions or environment?'' Plaintiff replied that she did not know, and that she had no way of knowing whether he had changed his habits.

The paramount consideration in determining the question of custody of a minor child is the welfare and best interest of the child. (*Sorrels* v. *Sorrels,* 105 Cal.App.2d 465, 469 [234 P.2d 103].)

The general rule is that in order ''To justify a modification of an order for custody of a minor child there must be a change of circumstances arising after the original decree was entered . . . which [change] makes a modification of the former custodial order advisable from the consideration of the welfare of the child. . . .'' (*Johnson* v. *Johnson,* 72 Cal. App.2d 721, 723 [165 P.2d 552].) The ''change of circumstances'' rule is not an ''iron-clad'' rule, however, to which

there can be no possible exception. (See *Foster* v. *Foster*, 8 Cal.2d 719, 728 [68 P.2d 719].) As stated in that case (p. 728): "It is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed. [Citation.] It is also possible to conceive of some theoretical case in which some fact, secret and hidden at the time of the entry of the former judgment, would in the interest of the welfare of the child, justify a court in modifying the former order of custody despite the fact that there had been no actual change of circumstances since the entry of the former order." It was also said therein (p. 729): "However, such a case would be a most unusual one. It is more speculative than real. . . ." The present case does not present an exception to the general rule that there must be a change of circumstances. The burden was upon defendant herein to prove that circumstances or conditions had changed so as to justify his requested modification of the order for custody. (*Johnson* v. *Johnson, supra,* p. 724.) He had the burden of proving that such a modification would be for the best interest of the child, or at least to prove that such a modification would not be detrimental to her welfare. In *Foster* v. *Foster, supra,* it was also said at page 732: "In deciding a matter so vital to the parents and to the welfare of the child, it is important that the trial court in order to make as wise a decision as possible, should have as complete a picture of the whole background of the child as possible,—the financial condition of the parents, their interests, their morals, and their dispositions, as well as any other factor which might aid the court in determining the probabilities of either parent furnishing a happy, harmonious home for the child. In a question involving so intimately human relationships, the trial court has a delicate as well as a difficult problem to solve, and it may be that if some of the factors are missing, he may not arrive at the best solution." As above stated, in the present case several factors regarding the home surroundings and conditions of defendant were not before the trial judge. The judge was entitled to know the home environment of defendant; and that information should have been presented by the defendant. In summary, the evidence offered by defendant in support of his application for modification was: An implication that he lives in Boston. He has remarried, and his wife is a singer. His expenses exceed his income. His earn-

ings do not permit him to maintain a reasonable standard of living for his present family. The child is 11 years of age.

It might well be that defendant could present evidence that would be sufficient to justify such a modification of the order regarding custody, but under the record here there is practically no evidence which would make such modification advisable from the point of view of the welfare of the child. ■ An affirmance of the order herein would be, in effect, a ruling that a trial judge may modify an order regarding custody, by awarding custody to the parent who has not had the custody, without any evidence as to the location or kind of living quarters maintained by such parent, or as to the living conditions that would surround the child at such quarters, or as to the moral qualities of such parent or others with whom the child would be associated. ■ A trial judge has a broad discretion in determining the question of custody of a minor child (*Sorrels* v. *Sorrels,* 105 Cal.App.2d 465, 469 [234 P.2d 103]), but such discretion is to be exercised "only within the limits of fixed legal principles" (*Gossman* v. *Gossman,* 52 Cal.App.2d 184, 194 [126 P.2d 178]), and "To exercise that power all the material facts in evidence must be known and considered, together also with the legal principles essential to an informed, intelligent, and just decision" (*Ibid.*). The evidence herein was not sufficient to support an implied finding that such modification would be for the best interest of the child or that such modification would not be detrimental to her welfare. ■ In view of the meager amount of evidence in the record bearing upon the subject of the welfare of the child under such change of custody, this court must conclude that it was an abuse of discretion to modify the custody provision of the judgment.

Appellant contends further, as above stated, that the court abused its discretion in reducing the amount to be paid for the support of the child. She argues that the provision in the property settlement agreement that defendant should pay $200 a month for the support of the child is an "integral part" of the property settlement agreement and is inseparable therefrom; that, in said agreement, she specifically waived her right to alimony in order to obtain a provision in said agreement that defendant would pay $200 a month for the support of the child; and that, by reason of such provision in the agreement, the court did not have the right to modify the provision in the divorce judgment which required the payment of $200 a month for child support, except upon a very

clear showing that the welfare of the child made such a demand. The property settlement agreement provided that the property be divided between the parties in a certain manner, that plaintiff have custody of the child, and that the defendant pay to plaintiff for the support of the child $200 a month during the minority of the child. In *Streeter* v. *Streeter,* 67 Cal.App.2d 138, it was said at page 142 [153 P.2d 441]: "There is a vast difference between a property settlement confined to the interests only of husband and wife, and an agreement wherein the rights or the support of a minor is involved." It was also stated therein (p. 145) that if the provision for payment "was intended as an agreement for the support of the child it was, under all the authorities, subject to modification." In *Avila* v. *Leonardo,* 53 Cal.App.2d 602, it was said at page 607 [128 P.2d 43] that the authority of the court to make necessary orders for the support of minor children "is conferred by statute, and its exercise cannot be limited or abridged by the parties." In the present case, the order for the payment of $200 a month for the support of the child was subject to modification. The evidence on behalf of defendant, with respect to his ability to pay for the support of the child, was sufficient to justify the order reducing the amount to be paid by him. The court did not abuse its discretion in modifying the support provision of the judgment.

The order is reversed insofar as it modifies the judgment as to custody. In all other respects the order is affirmed.

Shinn, P. J., and Vallée, J., concurred.