[Civ. No. 4837.   Fourth Dist.   June 16, 1954.]

DOLORES LOUISE SMITH, Appellant, v. CHARLES K. SMITH, Respondent.

Stanford & McDonough for Appellant.

Thomas P. Golden for Respondent.

GRIFFIN, J.—Plaintiff obtained an interlocutory decree of divorce from defendant on March 21, 1951, and it provided that plaintiff be awarded the care, custody and control of their minor daughter, Charlene Marie Smith, then aged about 5 years, "subject to the right of defendant to visit the said child at reasonable times." This form of order was agreed upon in a property settlement agreement signed by the parties. The agreement also contained a provision that the child could be taken to Arkansas for a visit with the father's parents, provided the maternal grandmother of the child take her and that the child would be under her exclusive care.

On March 24, 1952, a final decree was entered adopting the provisions of the interlocutory decree in this respect. Defendant, according to his affidavit filed in connection with his motion to modify the decree respecting the right of visitation, recites that on occasions the plaintiff refused to permit defendant to take the child from her home unless she or her mother was present with defendant; that he, being in the Marine Corps service near Santa Ana, desired to take the child with him on week ends to that city and that plaintiff refused him this right; that he is given a furlough for one month each year and desires to spend this month each year with his child and visit his parents in Arkansas. He requested the court to declare, in particular, his rights of visitation, and asked for an order allowing him to take the child to Arkansas alone, for the period and for the purposes indicated.

Several affidavits of physicians and others used in opposing this motion were submitted. They indicated that the child's health would be greatly jeopardized by such an order; that the child was subject to food allergies and had an asthmatic condition; that any change in diet or environment would be detrimental to her health; that plaintiff never refused reasonable visitation by defendant with said child, and in fact allowed him, on two occasions, to take the child to Santa Ana, but that upon her return the child complained of exhaustion and other illness, and of the necessity of being left to the care of unknown acquaintances or friends of defendant.

Upon the hearing of the motion the court made an order and decree that the "orders respecting the right of visitation . . . be modified" as follows: defendant to have the right of visitation the first and third week end of each month from Saturday p. m. at 3 o'clock to Sunday evening at 7 o'clock,

and have the right to take the child with him to Santa Ana during such period. It then ordered that he shall have the right of visitation *"and custody"* for a period of three weeks during the summer months and during such time as he shall obtain leave, and have the right to remove the child from the State of California.

Thereafter, plaintiff moved to set aside this order of modification and asked that defendant's right of visitation be confined to the city of San Diego. Affidavits in support of the order were filed, reiterating the physical condition of the child and the probable undesirable results to her that might flow from a compliance with the order as made. A most convincing medical showing was made why the child should not be removed from plaintiff's home. This showing might well have justified an order refusing defendant's request to take the child out of the city and away from the mother's home care and surroundings and from her medical advisers.

In reply defendant averred that he was a capable and loving father; and that he would accept the advice of plaintiff and the doctors as to the best diet and care that should be given the child.

The court then made an order denying this motion, continued the previous order in effect, and then made an order that defendant be forbidden to file any matters in any jurisdiction outside of the State of California regarding the custody of said minor child. Plaintiff appealed from these two last-mentioned orders and contends that the orders were a material modification of the previous *"custody"* order; that they in effect give defendant actual *custody* of the child for a period of three weeks each summer and grant defendant more extensive visitation rights than those agreed upon by the parties in their property settlement agreement and granted by the court's interlocutory decree. It is contended that although section 138 of the Civil Code grants authority to modify orders regarding the custody of children, this grant of authority is limited in this, that before custody may be changed from one parent to another, when both are fit and proper persons, a change of conditions must develop between the time of the interlocutory decree and the subsequent order changing such custody which, from the point of view of the welfare of the child, makes such a modification of the former order advisable, citing such cases as *Olson* v. *Olson,* 95 Cal.App. 594 [272 P. 1113]; *Foster* v. *Foster,* 8 Cal. 2d 719 [68 P.2d 719]; *Dixon* v. *Dixon,* 76 N.J.Eq. 364 [74 A.

995]; and *Washburn* v. *Washburn,* 49 Cal.App.2d 581 [122 P.2d 96].

It is then argued that defendant's affidavit shows no change of conditions and that accordingly the order of custody should not have been modified. It is also claimed that the trial court abused its discretion, under the facts shown, in so modifying this order as well as the right of visitation order, citing *Sorrels* v. *Sorrels,* 105 Cal.App.2d 465 [234 P.2d 103]; and *Juri* v. *Juri,* 69 Cal.App.2d 773 [160 P.2d 73], where the court held it to be an abuse of discretion to modify a previous order of custody and deprive the mother of the custody of the child for four months.

We are in accord with plaintiff's contention, under the authorities cited. Had the court, upon more convincing evidence, merely modified or changed the right of visitation of defendant. by the order a different question might here arise. The order not only modified and clarified the visitation rights but absolutely changed the custody of the child from the mother to the father for a three-week period each year for the purpose of taking the child out of the State of California, and no adequate showing was made why the custody of the child should be changed for this purpose. It was not shown how or in what manner the child would be benefited by such a change. (*Gantner* v. *Gantner,* 38 Cal.2d 691 [242 P.2d 329].) In fact, the showing is that the mother was a fit person to have custody in the first instance and so remained, even during the three-week period involved. There was no change in her status. In fact, the ability of the father and his parents in Arkansas to properly care for the child under the circumstances shown was highly problematical.

In respect to the change in *custody* a serious question also arises which is deserving of consideration. The seriousness of the distinction between changing *custody* and changing *visitation rights* is apparent. The possibility of the defendant father (after securing legal custody of the child although for a limited period) taking the child to another state, and the possibility of his commencing legal action therein for her permanent custody, might well arise. This is indicated by the additional order made forbidding defendant from filing any matter in other jurisdictions regarding the right of custody. Just how this order could be enforced by plaintiff in this action is not pointed out, particularly where defendant's future residence in the service is so indeterminable, and where defendant may never return to California again.

In *Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321], the court discusses, at some length, the unhappy consequences which result from one parent being able to shop from one state to another until one is found which will hold that conditions have changed, and award him custody of a child.

*Stagliano* v. *Stagliano*, 125 Cal.App.2d 343 [270 P.2d 91], is factually similar to the instant case. There, plaintiff obtained an interlocutory judgment of divorce, stating that a property settlement agreement of the parties was approved. In that judgment the custody of the minor daughter, 5½ years of age, was awarded to plaintiff, subject to defendant's right of reasonable visitation. The final judgment of divorce included those provisions as to custody and support. Later, defendant applied for an order directing plaintiff to show cause why the provisions relating to custody and support should not be modified to allow defendant to have custody of the child during school vacation periods. The court made an order that plaintiff have custody subject to defendant's reasonable visitation, and provided that "defendant shall have physical custody of said child for a period of four consecutive weeks" in the summer and may transport the child out of the state. The mother of the child appealed from the order, contending that the court abused its discretion in modifying the order regarding custody, on the theory that there was no evidence which would warrant such modification. The court thoroughly discussed the showing there made and summarized it as follows:

"Defendant did not present any evidence which purported to describe the house or place where he lives. The only evidence regarding his dwelling place was testimony implying that he lived in Boston. There was no evidence regarding the living conditions which prevail in his home. . . . There was no evidence as to what supervision or care Hope would have when he was performing his duties with the orchestra. . . . It thus appears that it was not shown what the home environment would be if Hope were to go to defendant's home."

The court then cited several cases holding that the paramount consideration in determining the question of custody of a minor child is the welfare and best interests of the child, and to justify the modification of an order for custody of a minor child there must be a change of circumstances arising after the original decree, which change makes a modification of the former custodial order advisable from the

consideration of the welfare of the child. The court then concluded that the burden was upon the defendant to prove that circumstances or conditions had changed so as to justify his requested modification of the order for custody, and to prove that such modification would be for the best interests of the child, or at least to prove that such a modification would not be detrimental to her welfare. It was then stated that several factors regarding the home surroundings and conditions of defendant were not before the trial judge, and he was entitled to know the home environment of defendant; that it might well be that defendant could present evidence that would be sufficient to justify such a modification of the order regarding custody, but under the record there presented, practically no evidence which would make such modification advisable from the viewpoint of the welfare of the child was presented. It then concluded that ''A trial judge has a broad discretion in determining the question of custody of a minor child,'' but that such discretion is to be exercised only within the limits of fixed legal principles, citing cases and quoting from *Gossman* v. *Gossman*, 52 Cal.App.2d 184, 194 [126 P.2d 178], to the effect that ''To exercise that power all the material facts in evidence must be known and considered, together also with the legal principles essential to an informed, intelligent, and just decision.'' It then concluded that the evidence related was not sufficient to support an implied finding that such modification would be for the best interests of the child or that such modification would not be detrimental to her welfare, and held that it was an abuse of discretion to modify the custody provision of the judgment.

We conclude that the order thus signed, taking away the *custody* of the child from the mother and giving it to the father for the term and for the purpose indicated, is not sufficiently supported by satisfactory evidence.

Order reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 12, 1954, and respondent's petition for a hearing by the Supreme Court was denied August 10, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.