[Civ. No. 26539. Second Dist., Div. Two. Dec. 27, 1962.

EVELYN G. COIL, Plaintiff and Appellant, v. DONALD E. COIL, Defendant and Respondent.

Heily & Herman and DeWitt F. Blase for Plaintiff and Appellant.

H. F. Rosenmund for Defendant and Respondent.

FOX, P. J.—The basic issue on this appeal is: did the trial court abuse its discretion in changing the custody of the 12-year-old son of the parties from the mother (plaintiff) to the father?

Defendant is an enlisted noncommissioned officer in the United States Air Force, having been in that branch of the military service for some 19 years. In 1959 he was assigned to duty overseas. He returned in June 1961. Upon his return, his wife, who had continued to live in Oxnard with their son during his absence, filed suit for divorce. The case was heard as a default and an interlocutory decree was granted plaintiff. By stipulation she was awarded custody of the minor child, Donald, subject to the right of reasonable visitation on the part of the defendant.

Defendant was on leave prior to his reassignment to duty at Maxwell Air Force Base in Alabama. He planned to spend a portion of his leave at the home of his wife's parents in Hernando County, Florida. An agreement was reached between plaintiff and defendant whereby defendant was permitted to take the minor child with him, during which time he would visit his maternal relatives who lived in Florida.

During the course of this trip across the country, Donald spoke to his father about the many men friends who had been staying at their home with his mother while he was gone. He specifically mentioned one Scotty, who had stayed overnight on occasion and also a man named Paul who thereafter had started to stay at the house overnight on occasion and was still doing so. He told his father that he did not like Paul; also, that Paul slept in the same bedroom with his mother on many occasions and on one occasion he found a note pinned on the door telling him (Donald) not to disturb them in the morning.

There was testimony to the effect that many men had been observed coming and going from plaintiff's home and that there were quite often a great many cars parked there; also testimony that Scotty had spent a great deal of time at the home of plaintiff and had stayed overnight on numerous occasions. Later, Paul's car was observed parked there overnight frequently; it was also brought out that he had spent an entire week in the home during July 1961. It was further disclosed

that Paul had taken plaintiff and Donald on a trip to Phoenix and that they had stayed overnight at Paul's parents. Paul and plaintiff made an automobile trip together across the country to get Donald when defendant had not returned him in accordance with the arrangements that had been made between the parents when he went with his father to visit in Florida.

Plaintiff admitted that she became pregnant in the early part of 1960. She denied, however, having willingly had sexual relations with any person and told a fantastic story as to how her pregnancy occurred. She made a trip to Mexico with Scotty where an abortion was performed.

One of the neighbors testified to an occasion when the boy came to her house after dark, stating that he had been left alone and did not know where his mother was. At another time plaintiff left the boy at home alone with a telephone number where she could be reached. This was the telephone number of a local bar.

Plaintiff admitted that she frequented various bars in Oxnard with different men during the evening hours but claimed that on all occasions she had left the boy with a baby sitter. She denied any misconduct with the men who had spent the night at her home, claiming in each instance that the man had slept on the couch. She further testified that she had endeavored over the past several years to give Donald remedial medical care for his stuttering and that she had taken an active interest in his social life; that she had seen to it that he attended church regularly and that he joined the Boy Scouts; and that she was a den mother when he was a Cub Scout. There was also testimony from neighbors that plaintiff's home was well kept; that she was sincerely interested in Donald; that he was well cared for; and that she was a fit and proper mother.

There was testimony that Donald was nervous and that he stuttered. Mrs. Blick, plaintiff's sister of Jacksonville, Florida, testified that after Donald had been there a short time (when he came back with his father), he showed marked improvement as to his nervousness and stuttering. Mrs. Blick, as well as some of the neighbors in Oxnard, testified that there was a very close relationship between Donald and his father and that the father took a great interest in caring for Donald. Mrs. Blick expressed the opinion that "it would serve the best interests of the child if the defendant had the custody of the child."

Donald was questioned by the court in chambers in the presence of the clerk and bailiff and attorneys for the respec-

tive parties with the consent of the parties. Donald confirmed to the court that he had told his father about his mother's relationship with Scotty and Paul while they were enroute to Florida. He also confirmed the statement that Paul had stayed overnight on many occasions and that on one occasion he had found a note pinned on the bedroom door telling him not to disturb them in the morning.

Defendant testified that he had been in the military service for approximately 19 years and was eligible for retirement within the next year but at that time he had not decided when to retire; that his decision regarding retirement was somewhat contingent upon whether or not he was awarded custody of Donald; that in the event he was awarded custody, he would definitely retire and return to Florida which he considered to be his home; that he would have a military retirement benefit and would also be able to secure employment as a civil service employee and thus be able to maintain a very adequate income. Defendant further testified that he was then stationed at Maxwell Air Force Base in Alabama; that at said base there were housing and school facilities available; that if he were awarded custody of Donald, he would be able to obtain a home on the base at which he and the boy could live; that there would be ready access to schools and all other necessary requirements for living. Defendant stated that upon his return from overseas, he observed that Donald was in a very nervous condition and that his stuttering had become worse.

Apposite here are the principles recently stated by this court in *Wood* v. *Wood* (a change of custody case), 207 Cal.App.2d 33, 36 [24 Cal.Rptr. 260]: ''It is settled that (1) 'An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion.' (*Munson* v. *Munson,* 27 Cal.2d 659, 666 [166 P.2d 268]): (2) in passing on such a question 'primary consideration must be given to the welfare of the child.' (*Sanchez* v. *Sanchez,* 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533]); and (3) every presumption is in favor of the reasonableness of the order. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 209 [259 P.2d 656].)

Pertinent here also is the comment of the court in *Ducharme* v. *Ducharme,* 152 Cal.App.2d 189 [313 P.2d 33]: 'It has been held repeatedly that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and deter-

mine the factual issues presented by their testimony; and, observes the court in *Currin* v. *Currin,* 125 Cal.App.2d 644, 651 [271 P.2d 61], "this is especially true where the custody of minor children is involved. ▮▮▮ An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts."

▮ It is the trial court's responsibility to pass on the credibility of witnesses, the weight to which their testimony is entitled, and the inferences to be drawn from the evidence. On appeal it is, of course, the duty of this court to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the successful party in the court below.' "

▮ Applying these principles to the factual picture of this case, it is unmistakably clear that the order of the trial judge must be affirmed. The evidence amply justifies the conclusion that plaintiff's misconduct created an unwholesome environment for a boy at the impressionable age of Donald; that he was aware of her misbehavior and that this was detrimental to Donald's best interest. ▮▮▮ But, argues plaintiff, relying on *Foster* v. *Foster,* 8 Cal.2d 719 [68 P.2d 719], there has been no change of circumstances since the entry of the interlocutory decree which requires a change of custody. In making this argument plaintiff overlooks the observation of the court that "some fact, secret and hidden at the time of the entry of the former judgment, would in the interest of the welfare of the child, justify a court in modifying the former order of custody despite the fact that there had been no actual change of circumstances since the entry of the former order." (P. 728, [6].) This statement precisely fits the situation in the case at bench. Here the father, who had been absent and overseas on military duty for a period of two years and was therefore in no position to know of his wife's conduct during his absence, was greeted by a divorce complaint upon his arrival home. Without knowledge of his wife's misbehavior and the obvious detriment thereof to Donald who was aware of it, the father agreed in the divorce suit that she might retain custody of Donald. Thereafter, he learned from the lips of Donald of the conduct and misbehavior of his wife during his absence. This information was confirmed and augmented by the testimony of her neighbors. Some of her misbehavior was admitted by her on the witness stand. As to other malevolent acts, she gave explanations which obviously were disbelieved by the trial judge. The facts were hidden from defendant at the time of his agreeing to the original custody order in the

divorce case and at the time of the entry of the interlocutory decree. He took immediate steps to remedy the situation upon learning the true facts. In these circumstances, it is obvious that the so-called change of circumstances rule has no application. See also *Loudermilk* v. *Loudermilk*, 208 Cal. App.2d 705 [25 Cal.Rptr. 434], where the court points out (pp. 707-708) that the rule is, in addition, not applicable where, as here, the original order awarding custody of a minor has been entered on a stipulation between the parties, since the primary question that the court must answer, *viz.*, what would be in the best interest of the child, has not been really litigated.

 Plaintiff also argues that no sufficient showing was made with respect to the home and environment that defendant proposes to establish for his son. His testimony shows that he was then stationed at Maxwell Air Force Base in Alabama, that at this base there were housing and school facilities available; and that if he were awarded custody of Donald, he would be able to obtain a home on the base at which he and Donald could live together, and that there was ready access to schools as well as to all other necessary living requirements. Defendant's pay was adequate to meet appropriate living expenses. The trial judge could reasonably conclude from this testimony that housing conditions, living accommodations and school facilities would be fully adequate. There is nothing to suggest that the moral atmosphere would either be detrimental or unwholesome. The presumption would be quite to the contrary for it is a matter of common knowledge that families with children live on such military bases all over the country. Thus it cannot be said that defendant has not made reasonable provision for satisfactorily taking care of Donald until he retires from military service. When that time arrives, it is a reasonable inference, in view of the close relationship between the father and the son and the father's obvious deep interest in his son's welfare, that the father will make adequate provision for taking care of Donald in a satisfactory environment. In the event he should fail in this responsibility, the mother, if so advised, will of course have opportunity to make appropriate application to the courts.

*Stagliano* v. *Stagliano*, 125 Cal.App.2d 343 [270 P.2d 91], and *Smith* v. *Smith*, 126 Cal.App.2d 65 [271 P.2d 178], relied on by plaintiff, are not persuasive in view of important factual distinctions between those cases and the one at bench. There is no suggestion in either of these cases that the mother was guilty of conduct that was detrimental to the child's best

interest. In the *Stagliano* case, the father was a musician who, although nominally based in one city, made trips of substantial duration to other cities both for auditions and for series of concerts; further, there was no showing at all relating to the living conditions prevailing in his home (in which he lived with a second wife and 6-month-old child); nor was there testimony relevant to her ability to supervise or care for the 11-year-old child involved in the order. It also appeared that "[h]is earnings do not permit him to maintain a reasonable standard of living for his present family." (Pp. 348-349.) In *Smith*, the father proposed taking the child (a girl 7 or 8 years of age) to Arkansas to visit his parents during the father's month-long furlough from military service in California. The trial court authorized this visit. The child was subject to food allergies and had an asthmatic condition. It appeared that "any change in diet or environment would be detrimental to her health." (P. 66.) The court concluded that "the ability of the father and his parents in Arkansas to properly care for the child under the circumstances shown was highly problematical." (P. 68.) Since it did not appear that the proposed visit was for the best interest of the child, the order was reversed. In the instant case it appears that the boy's nervousness and stuttering improved while he was on the visit to Florida with his father.

There is no merit in plaintiff's contention that "[t]he court abused its discretion in refusing to consider the preference of the child. . . ." The comment of the court on this point in *Stack* v. *Stack*, 189 Cal.App.2d 357, 364-365 [11 Cal. Rptr. 177], is here apposite: "[I]t is not a ground for reversal that the court refused even to consider the desires of the child. [Citations.] In many cases it may be quite unwise to inquire as to the child's preferenec; doing so may destroy what little good will is left between the parents or between one of the parents and the child."

Bearing in mind that in a custody case "primary consideration must be given to the welfare of the child" (*Sanchez* v. *Sanchez*, 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533]), and that the trial court is given a wide discretion in such matters, it cannot be said, in the state of this record, that the court abused its discretion in changing the custody of Donald from his mother to his father.

Affirmed.

Ashburn, J., and Herndon, J., concurred.